UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MAERSK INC., | ) CIVIL NO. CV 04-00652 (HG/BMK) |
| | ) (In Admiralty) |
| Plaintiff, | ) |
| | ) **MEMORANDUM IN SUPPORT** |
| vs. | ) **OF MOTION** |
| | ) |
| HARTMANN METALS | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . 1

II. STATEMENT OF MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A. Maersk Is The Carrier And HMC Is The Shipper . . . . . . . . . . . . . . 3

    B. The Four Subject Shipments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1. Unpaid Demurrage: SJ1D42109 And SJ1321026 . . . . . . . . . . 4

        2. Unpaid Ocean Freight: SJ1D42009 And SJ1D321026 . . . . . 11

        3. Failure To Pay The Tarriff Rate on SJ1D45274 . . . . . . . . . . 12

III. LEGAL STANDARD ON SUMMARY JUDGMENT . . . . . . . . . . . . . . . 12

IV. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A. HMC Is Liable For The Unpaid Demurrage On 1026 And 2109 . . 13

    B. HMC Is Liable For The Admittedly Unpaid Ocean Freight
       On BOL Nos. 1026 And 2009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    C. HMC Is Liable For The Tarriff Rate On BOL 5274 . . . . . . . . . . . 19

    D. Maersk Is Entitled To Prejudgment Interest . . . . . . . . . . . . . . . . . . 20

    E. Maersk Is Entitled To Recover Attorneys' Fees And Costs . . . . . . 21

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

Page

<u>Cases</u>

*American Transport Lines, Inc. v. Wrves*, 985 F.2d 1065, (11th Cir. 1993) . . . . . 20

*Ariza v. Consolidation Coal Co.*, 63 F.2d 42, 43 (4th Cir. 1933)  . . . . . . . . . . . . 14

*DeCarlo v. Italian Line*, 416 F. Supp. 1136 (S.D.N.Y. 1976)  . . . . . . . . . . . . . . . 17

*Farrell Lines Inc. v. Columbus Cello-Poly Corp.*,
   1997 U.S. Dist. LEXIS 1387 (S.D.N.Y. Sept. 12, 1997) . . . . . . . . . . . . . 17

*Guangzhou Ocean Shipping Co. v. G.T. Int'l, Inc.*,
   1997 AMC 241, 245 (C.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*H & A Trading Co., Inc. v. Margo Farms Del Caribe, Inc.*,
   1992 AMC 2238 (D.P.R. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Kientzler v. Sun Line Greece Spec. Shipping Co.*,
   779 F. Supp. 342, 346 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Louisville & N.R.R. Co. v. Central Iron & Coal Co.*, 265 U.S. 59 (1924) . . . . . . 14

*Maersk, Inc. v. Alan Marketing, Inc.*, 1998 U.S. Dist. LEXIS
   4816 at *3-4 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 4, 15, 16, 17, 21

*Maersk, Inc. v. American Midwest Commodities Export Companies, Inc.*,
   1998 U.S. Dist. LEXIS 12219, *10 (S.D.N.Y. 1998) . . . . . . . . . . . . . . 4, 15

*Maersk, Inc. v. Atcom Industries*, 73 F. Supp.2d 387,
   390 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15, 16

*Maersk, Inc. v. Royal Brands International*,
   2001 U.S. Dist. LEXIS 5308, *6 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . 4, 15

*Main Island Creek Coal Co. v. C & O Ry.*, 23 F.2d 248 (6th Cir. 1928) . . . . . . . 14

*Marchewka v. Bermuda Star Lines*, 937 F.Supp. 328, 333 (S.D.N.Y. 1996) . . . . 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) . . 13

*Ocean Trans. Line, Inc. v. Am. Philippine Fiber Indus., Inc.*,
　　743 F.2d 85, 92 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sea-Land Services, Inc. v. Amstar Corporation*, 690 F. Supp. 246, 257-48
　　(S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15, 21

*Sea-Land Services, Inc. v. H. Brothers Corporation*,
　　1985 U.S. Dist. LEXIS 17813, at *6 (S.D.N.Y. 1985) . . . . . . . . 3, 15, 16, 19

*Sea-Land Services, Inc. v. H. Brothers Corporation*,
　　1985 U.S. Dist. LEXIS 17813, *9-10 (S.D.N.Y. 1985) . . . . . . . . . . 4, 15-16

*Sea-Land Services, Inc. v. H. Brothers Corporation*,
　　1985 U.S. Dist. LEXIS 17813, *16 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . 21

*Sea-Land Service, Inc. v. Landis*, 1996 U.S. Dist. LEXIS 35,
　　*9 (E.D. Penn. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15, 17, 20, 21

*Sea-Land Service, Inc. v. Murrey & Son's Co. Inc.*,
　　824 F.2d 740, 744 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*States Marine International, Inc. v. Seattle-First National Bank*,
　　524 F.2d 245, 247 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Tran v. State Farm Mut. Auto Ins. Co.*, 999 F. Supp. 1369
　　(D. Hawaii 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*U.S. v. United States Steel Products Co.*, 27 F.2d 547, 548
　　(S.D.N.Y. 1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Vance v. American Hawaii Cruises*, 789 F.2d 790, 795 (9th Cir. 1986) . . . . . . 20

*Yang Ming Marine Transport Corporation v. Okamoto Freighters Ltd.*,
　　259 F.3d 1086, 1093 n.1 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Rules and Statutes</u>

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Haw. Rev. Stat. § 478-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Other Authorities</u>

28 U.S.C. § 1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

46 U.S.C. § 1707(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

46 U.S.C. § 1709(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## MEMORANDUM IN SUPPORT OF MOTION

Plaintiff MAERSK, INC. ("Maersk"), by and through its attorneys Damon Key Leong Kupchak Hastert, files its Memorandum In Support of its Motion For Summary Judgment.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This is an ocean freight collection case in which Defendant HARTMAN METALS CORPORATION ("HMC") owes Maersk unpaid ocean freight and charges in the amount of $73,936.41.

Maersk is an ocean carrier that provides ocean transportation and related services in Hawaii and throughout the world.  HMC is a Hawaii scrap metal shipper. This case involves HMC's undisputed failure to pay Maersk for ocean freight and charges incurred on four shipments of scrap metal from Hawaii to HMC's customers in China, in the total amount of $73,936.41.

For each of the four shipments at issue, HMC requested Maersk provide transportation of containers of scrap metal from Hawaii to China.  HMC provided Maersk with all the information contained in the Bills of Lading ("BOL").  Maersk provided the transportation as requested, including frequent diversions from one Chinese port to another to another, at HMC's request.   HMC was paid by its customers in China, but when it came time to pay Maersk, HMC refused.

For two of these shipments, HMC has refused to pay demurrage and diversion charges totaling $54,311.05, costs associated with the diversion and late

retrieval and return of Maersk's equipment in China. HMC, however, made repeated, written unequivocal promises to Maersk that HMC, not its Chinese customer, would pay these costs (promises that HMC admits it made to induce Maersk to release the cargo to HMC's customer so HMC would be paid). There are also two shipments (including one of the foregoing) where HMC simply failed to pay the ocean freight in the total amount of $18,875.36, and it readily admits these sums are owed to Maersk. Finally, on a fourth bill, HMC admits is "short-paid" Maersk, underpaying the tariff freight rate for one shipment by $750.00.[1]

In this case, each of the BOLs, which are the contract between HMC and Maersk, provide that HMC – the shipper – is liable for all ocean freight and charges. More importantly, it is well-settled law in the Ninth Circuit that the shipper remains primarily liable for unpaid ocean freight and charges. Finally, in this case, HMC repeatedly promised Maersk, in writing, that it would be responsible for all ocean freight and charges that were being incurred so that Maersk would release the cargo to HMC's customers in China and HMC would be paid.

Because the facts are undisputed and Maersk is entitled to judgment as a matter of law, this Court should enter summary judgment in favor of Maersk and against HMC in the amount of $73,936.41, plus prejudgment interest. Maersk is also

---

[1]$54,311.05 + $18,875.36 + $750.00 = $73,936.41.

entitled to recover its attorneys' fees and costs, and the Court should award those upon submission of an affidavit of counsel following the hearing on this Motion.

## II.    <u>STATEMENT OF MATERIAL FACTS</u>

### A.    <u>Maersk Is The Carrier And HMC Is The Shipper.</u>

Maersk is an ocean carrier that provides ocean transportation between Hawai`i to Asia. *See* Separate and Concise Statement of Facts ("SCSF") at ¶1.

HMC is a scrap metal dealer, buying scrap metal in Hawaii and reselling it to customers in China. SCSF at ¶ 2. Its President, sole shareholder and sole employee is Mr. Hanni Hartmann. *Id.*

### B.    <u>The Four Subject Shipments</u>

This case involves HMC's admitted failure to pay the full ocean freight and charges on four Bills of Lading ("BOL"), in the total amount of $73,936.41. SCSF at ¶ 3. "A bill of lading is a contract of carriage between the shipper and the carrier." *Sea-Land Services, Inc. v. H. Brothers Corporation*, 1985 U.S. Dist. LEXIS 17813, at *6 (S.D.N.Y. 1985). Copies of the four BOLs, BOL Nos. SJ1D42109 ("2109"), SJ1321026 ("1026"), SJ1D42009 ("2009"), and SJ1D45274 ("5274"), are attached as Exhibits "1"-"4" to the SCSF.

Each BOL is prepared by Maersk at HMC's direction. SCSF at ¶ 4. HMC would provide essential information to Maersk, such as the number and contents of containers, the destination, and the party to whom the containers should

be delivered at the destination. *Id.* Each BOL was made "freight prepaid," which is an industry term <u>meaning the shipper, HMC, is responsible for the charges</u>. *Id.*

Each of the shipments and HMC's admissions will be discussed below. However, each BOL contains identical critical language:

> <u>The shipper,</u> consignee, holder hereof, and the owner of the goods and their principals <u>shall be jointly and severally liable to the Carrier for the payment of all freight, demurrage,</u> General Average and other charges due hereunder, without discount, together with any Court costs, expenses and reasonable attorneys fees incurred in collecting any sums due Carrier.

SCSF at ¶ 3; Exhibits "1," "2," "3" and "4" at ¶ 14.4 (emphasis added).[2]

### 1.    Unpaid Demurrage: SJ1D42109 And SJ1321026

HMC entered a contract with Jade Alliance/Lee Cheung ("Jade Alliance"), its customer in China, for the sale of scrap metal located in Hawaii for delivery to China. SCSF at ¶ 5.[3] As Mr. Hartmann testified, HMC does not provide

---

[2]Courts have repeatedly held that this provision is valid and enforceable. *See, e.g., Maersk, Inc. v. Royal Brands International*, 2001 U.S. Dist. LEXIS 5308, *6 (S.D.N.Y. 2001); *Maersk, Inc. v. Atcom Industries*, 73 F. Supp.2d 387, 390 (S.D.N.Y. 1999); *Maersk, Inc. v. American Midwest Commodities Export Companies, Inc.*, 1998 U.S. Dist. LEXIS 12219, *10 (S.D.N.Y. 1998); *Maersk, Inc. v. Alan Marketing, Inc.*, 1998 U.S. Dist. LEXIS 4816 at *3-4 (S.D.N.Y. 1998); *Sea-Land Service, Inc. v. Landis*, 1996 U.S. Dist. LEXIS 35, *9 (E.D. Penn. 1996); *Sea-Land Services, Inc. v. Amstar Corporation*, 690 F. Supp. 246, 257-48 (S.D.N.Y. 1988); *Sea-Land Services, Inc. v. H. Brothers Corporation*, 1985 U.S. Dist. LEXIS 17813, *9-10 (S.D.N.Y. 1985).

[3]Mr. Hartmann did not know whether his contract was with Jade Alliance or Lee Cheung, two Chinese companies, but he viewed them as the same. SCSF at ¶ 5

Maersk with these contracts "[b]ecause that is not relevant for the business I have with Maersk." *Id.*; *See* Deposition of Hanni Hartmann ("Hartmann Depo.") at 72:3-11. Mr. Hartmann explained that Maersk has no knowledge of and no contract with HMC's customers:

> Q:    Now, do you provide Maersk with copies of your contracts with your partners in Asia?
>
> A:    No, that is not necessary.
>
> Q:    So in other words, regardless of what your agreement is with your partners in Asia about who is going to pay what portion of freight or free time or anything else, Maersk doesn't know that?
>
> \* \* \*
>
> A.    Maersk knows that I am responsible for the freight because I chartered and made a booking, and the conditions of this booking with Maersk matches my corresponding sale. []. So Maersk does know, okay, Hartmann ships ten containers. It is understood, let's say for the sake of it, they have ten days free time [in China], and my receiver knows that as well. Sometimes receiver comes and says can you give us 21 days? That does happen. But let's say Maersk gives us ten days, receiver knows he has ten days to pull the containers from Maersk in Shanghai, unload them, and return the containers. So this is the day-to-day procedure.
>
> Q:    Okay, and your buyer knows that because that's in your agreement with the buyer.
>
> A:    Yeah.
>
> Q:    ... [T]here will be instances, in fact, it could be routine that at the time you are putting cargo on to a vessel or making a booking, Maersk has no idea who your customer is?

A:    Yes and no.  Maersk certainly knows as part of my booking who the shipper is, who the consignee is, and who the notifying party is. []  However, it is possible that my contractual partner could be another party...

Hartmann Depo. at 73:21-75:19.

BOL Nos. 2109 and 1026 were part of the same "booking" made by HMC for its contract with Jade Alliance.  SCSF at ¶ 6.[4]  Both originated in Hilo, Hawaii, and were originally destined for Shanghai. *Id.*

BOL 2109 involved the transportation of seven containers of steel scrap bundles, which sailed from Hawaii on the Horizon Spirit in late December, 2003.  SCSF at ¶ 7.  BOL 1026 involved the transportation of thirteen containers of steel scrap bundles, which sailed from Hawaii on the Horizon Enterprise in early January 2004.  *Id.*  Mr. Hartmann does not recall why he didn't put all 20 containers on one ship. *Id.*

HMC's customer in China, Jade Alliance, then requested that HMC divert the cargo from Shanghai to Chiwan, China.  SCSF at ¶ 8.  HMC assured Maersk that HMC would pay the diversion costs associated with this change.  *Id.*; Exhibit "5" ("This is to confirm we that we agree to absorb this conversion fee of $200.00 per this B/L"); Exhibit "6" ("We are in agreement to pay the $900 for this diversion").  HMC's

---

[4]A "booking" occurs when HMC requests that Maersk reserve space to transport containers from one location to another. *Id.*

customer then requested that HMC again divert the cargo, this time from Chiwan to Hong Kong. *Id.*

In addition to changing the destination from Shanghai, to Chiwan, to Hong Kong, HMC also changed the party who was authorized to receive the cargo (*i.e.* the "consignee" or "notify party"), from Minn Metals in Beijing to Sing Fung Trading Company in Hong Kong. SCSF at ¶ 9. By the end of January 2004, the cargo was sitting in Maersk's equipment and yard in Hong Kong, but the "notify" information provided to Maersk by HMC was incorrect. *Id.* Maersk had to request accurate information from HMC. *Id.* As Mr. Hartmann explained:

> Q:    ... Now, you testified earlier that you have to get original bills of lading because you have to get it to your customers because that's how you get paid, but here we have got twenty containers that are sitting in Asia somewhere, and your customer hasn't been supplied original bills of lading from you, and so now you are complaining what might have happened. Is that what you are doing in this document?

> A:    Looks like it. I am saying here in the paragraph above, we have not received OBLs for these two shipments either. **So apparently Maersk has not received data which was necessary for Maersk to issue the OBLs, that's what I'm saying here, so that they can release them to us.**

> Q:    So what you are saying is that the information – that Maersk was trying to contact the notify party in Beijing, and you are saying that the numbers that Jade Alliance had supplied didn't work, and that needs to get straightened out before original bills of lading can be issued, correct?

> A:    That's what I am saying here.

Hartmann Depo. at 178:1-22 (emphasis added).

Maersk notified HMC that storage and change of destination charges were being incurred. SCSF at ¶ 10. HMC asked Maersk to provide it with a summary of the charges that were accruing on the cargo. *Id.* Maersk responded by providing HMC a summary and explanation of the charges for the changes of destination and the demurrage (i.e. storage beyond free time). *Id.*

In response to Maersk's request that HMC confirm that it would pay the outstanding demurrage and destination charges, Mr. Hartmann wrote:

> **We have already agreed previously in writing to accept any additional charges; even without knowing how much they are. Simply to get moving and get out of this hole.... We herewith confirm again that any diversion charges and possible demurrage will be accepted by us being your contractual partner. We than [sic] will settle internally with our client in Hkg who has caused the diversions. Hope this clarifies matters.**

SCSF at ¶ 11; Exhibit "13" (emphasis in original). Mr. Hartmann admitted in his deposition that this means exactly what it says:

> Q:  Okay, and now, actually, tell me what it is that you are telling Maersk in this e-mail?
>
> A:  **Yeah, that I agreed that these charges are to be paid by us.**
>
> * * *
>
> A:  Yeah, see, and this is all here a big mess which I put myself into because we agreed to additional charges sailing under the assumption which is now biting me that, okay, these charges will be borne in Hong Kong, and Hong Kong walked away from it. This is a fact.

Hartmann Depo. at 194:2-16 (emphasis added).

Even as HMC and Jade Alliance worked to get the correct information to Maersk so the final BOLs could be prepared and the cargo released to HMC's customer in China, Mr. Hartmann continued to make written assurances to Maersk that HMC would pay the charges:

> The docs continued to show discrepancies; so Pam Lake [of Maersk] in Honolulu and myself have agreed to: **HMC will accept the charges for the covered shipments** and to get a new set or a THE set directly printed in Hkg [Hong Kong].

SCSF at ¶ 11; Exhibit "14." (Emphasis added).

Finally, HMC admits that its repeated promises to pay the demurrage and diversion charges were made so that Maersk would release the cargo to Jade Alliance in Hong Kong.  SCSF at ¶ 12:

> Q:    Now, ultimately, these two bills of lading that we have looked at, [1026 and 2109], and which you did not understand the presence of the import demurrage charges, you do recognize, though, that those are included on there because you told Maersk time and time and time again in these e-mails we are going to be responsible for that?
>
> A:    I don't deny what I have read here on – on several of these exhibits.
>
> Q:    And your goal was to tell Maersk that so that the cargo would be released –
>
> A:    To be –
>
> Q:    – to Jade Alliance?
>
> A:    – released, expedited, and out of the circle of sitting in port and not getting moved.

> Q:    And as a result of your telling Maersk that, the cargo was released, correct?
>
> A:    Eventually, cargo was released, yes, ...

Hartmann Depo. at 206:2-19.

HMC's customer, Jade Alliance, stiffed HMC.  SCSF at ¶ 13.  As Mr. Hartmann told Maersk the February 4, 2004 email – Exhibit "13"[5] – HMC tried unsuccessfully to recover from its customer:

> A:    Under the assumption, okay, we are responsible for it because I know my contractual partner will pay for it.
>
> Q:    Did you go back to your contractual partner and ask for the money?
>
> A:    Well, I went back to him and said, look, this was our agreement, you agreed to pay directly in China for all of these diversions and show – after I got hit with that invoice from Maersk or that demand with the statement, and they were not able to give me precise answers.  That's when I realized that something went terribly wrong.  See, at that time I asked, well, since – and they told me, yes, everything is taken care of, everything is fine.  Fine, then show me either return checks or your bank advice that you did pay Maersk for this circus which happened with these basically two sets of containers, and that information was not really supplied to me.

Hartmann Depo. at 207:2 -208:14.  Unable to "settle internally" with Jade Alliance, HMC decided to stiff Maersk.  *Id.*

---

[5]"any diversion charges and possible demurrage will be will be accepted by us ... We than [sic] will settle internally with our client in Hkg who caused the diversions"

Despite countless admissions that it owed and would pay the unpaid demurrage and diversion costs in Hong Kong, HMC failed and refused to pay.

## 2.    **Unpaid Ocean Freight: SJ1D42009 And SJID321026**

Rather than pay Maersk invoice by invoice, HMC frequently paid Maersk with lump sum payments that cannot be traced to any particular BOL. SCSF at ¶ 14.

In early 2004, after Maersk notified HMC that it had an unpaid balance of $73,936.41, Mr. Hartmann directed his bookkeeper, Ms. Dora Matsumura, to reconcile the account and determine what HMC owed to Maersk. SCSF ¶ 15. Because there was no way for HMC to correlate all of its payments with Maersk invoices, Ms. Matsumura could only use HMC's accounting software to compare Maersk invoices with HMC's payments. *Id.* This analysis was artificially limited to invoices and payments made post-October 2003, when the software was acquired. *Id.*

Despite the flawed methodology, which excluded pre-October 2003 invoices, Ms. Matsumura nevertheless determined that HMC owed Maersk ocean freight in the amount of $18,875.36. SCSF at ¶ 16. She determined that HMC did not pay Maersk ocean freight on two BOLs: 2009 and 1026. *Id.* She determined that HMC did not pay $8,565.00 for BOL 2009 and $10,310.36 for BOL 1026. *Id.*[6] Therefore, she recommended HMC pay $18,875.36 to Maersk, and Mr. Hartmann

---

[6]Mr. Hartmann instructed her not to consider the unpaid demurrage and diversion charges on BOL Nos. 1026 and 2109.

agreed with her recommendation. *Id.* Maersk, however, did not accept this attempted compromise and returned the payment. *Id.*

### 3.    Failure To Pay The Tariff Rate On SJ1D45274.

HMC admits that it paid only $10,775.00 on BOL 5274. SCSF at ¶ 17. This is $750.00 less than the ocean freight owed based upon the tariff rate in effect at the time the shipment was made. *Id.*[7] HMC contends that it is should only have to pay the ocean freight rate in effect at the time of its "booking," not the tariff rate in effect on the date the shipment was made. *Id.*

The containers in SJ1D45274 were loaded in Hawaii on January 7 and January 8, 2004, and were destined for Shanghai. SCSF at ¶ 18. The base freight is determined by tariff. *Id.* Tariff MAEU-167, the governing tariff in effect at the time the containers in 5274 were shipped, provided a freight rate of  $1,450.00 per container. *Id.*; Exhibit "17." Tariff MAEU-167 was open for the world, including Mr. Hartmann, to see in an automated tariff system maintained by Maersk. *Id.*

## III.  LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to

---

[7]The total ocean freight and charges on BOL 5274 is $11,539.81, however this sum includes a Hong Kong origin doc fee of HKD$115.00 or U.S.$ 14.81, which Maersk is not seeking to recover from HMC. Maersk seeks only the difference between the tariff rate and the amount paid, i.e., $11,525.00 - $10,775.00 = $750.00.

judgment as a matter of law." Fed. R. Civ. P. 56(c). A party opposing a motion for summary judgment may not "rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Genuine factual issues must be supported by significant probative evidence," a mere disagreement about a material issue of fact will not preclude summary judgment. *Tran v. State Farm Mut. Auto Ins. Co.*, 999 F. Supp. 1369, 1372 (D. Hawaii 1999). Where the evidence could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.    ARGUMENT

In this case, there is no genuine issue of material fact that (1) HMC requested and agreed to pay for the demurrage and diversion costs on BOL Nos. 1026 and 2109; (2) HMC owes $18,875.36 in unpaid ocean freight on BOL Nos. 1026 and 2009, and; (3) the freight rate charged by Maersk on BOL No. 5274 was $1,450.00 per container, as set by Maersk's published tariff, and Maersk is entitled to collect that rate. Maersk is entitled to judgment as a matter of law.

### A.    HMC Is Liable For The Unpaid Demurrage On 1026 And 2109.

Under the plain language of the contract and well-settled Ninth Circuit law, HMC is liable to Maersk for the diversion and demurrage charges on BOL Nos. 1026 and 2109.

"It is well settled that the shipper rather than the consignee is primarily responsible to the carrier for freight charges." *States Marine International, Inc. v. Seattle-First National Bank*, 524 F.2d 245, 247 (9th Cir. 1975) (citations omitted).

> If the shipper delivers the bill of lading to another, and thereby transfers title to the goods, **he is not relieved from the contractual obligations evinced by the bill of lading.** Nor does the carrier's delivery of the goods to the consignee necessarily have that effect. If, under the terms of the bill of lading, the shipper is primarily obligated to pay freight, demurrage, or other charges, the carrier may look to him alone, and need not enforce his lien on the goods, or seek payment from the consignee upon the latter's promise, inferred from his acceptance of the goods.

*U.S. v. United States Steel Products Co.*, 27 F.2d 547, 548 (S.D.N.Y. 1928) (emphasis added, citation omitted) (citing *Main Island Creek Coal Co. v. C & O Ry.*, 23 F.2d 248 (6th Cir. 1928)). Indeed, "[t]he obligation of the shipper to pay such charges after delivery of the goods to the consignee is purely contractual, and in each case depends upon the proper construction of the bill of lading." *Id.* (citing *Louisville & N.R.R. Co. v. Central Iron & Coal Co.*, 265 U.S. 59 (1924)). The primary obligation to pay the carrier's charges rest upon the shipper and such obligation survives an assignment of the bill of lading to another who receives the goods. *Ariza v. Consolidation Coal Co.*, 63 F.2d 42, 43 (4th Cir. 1933) (citing *U.S. v. United States Steel Products Co.*, 27 F.2d 547 (S.D.N.Y. 1928)).

The bills of lading are the parties' contracts. "A bill of lading is a contract of carriage between the shipper and the carrier." *Sea-Land Services, Inc. v. H. Brothers Corporation*, 1985 U.S. Dist. LEXIS 17813, at *6 (S.D.N.Y. 1985). In this case, each BOL contains identical language:

> The shipper, consignee, holder hereof, and the owner of the goods and their principals shall be jointly and severally liable to the Carrier for the payment of all freight, demurrage, General Average and other charges due hereunder, without discount, together with any Court costs, expenses and reasonable attorneys fees incurred in collecting any sums due Carrier.

Exhibit "1" - "4" at ¶ 14.4. Courts have repeatedly held that this provision is valid and enforceable. *See, e.g., Maersk, Inc. v. Royal Brands International*, 2001 U.S. Dist. LEXIS 5308, *6 (S.D.N.Y. 2001); *Maersk, Inc. v. Atcom Industries*, 73 F. Supp.2d 387, 390 (S.D.N.Y. 1999); *Maersk, Inc. v. American Midwest Commodities Export Companies, Inc.*, 1998 U.S. Dist. LEXIS 12219, *10 (S.D.N.Y. 1998); *Maersk, Inc. v. Alan Marketing, Inc.*, 1998 U.S. Dist. LEXIS 4816 at *3-4 (S.D.N.Y. 1998); *Sea-Land Service, Inc. v. Landis*, 1996 U.S. Dist. LEXIS 35, *9 (E.D. Penn. 1996); *Sea-Land Services, Inc. v. Amstar Corporation*, 690 F. Supp. 246, 257-48 (S.D.N.Y. 1988); *Sea-Land Services, Inc. v. H. Brothers Corporation*, 1985 U.S. Dist. LEXIS 17813,

*9-10 (S.D.N.Y. 1985). Thus, the contract plainly and unambiguously provides that HMC is liable for the ocean freight and demurrage.[8]

Furthermore, the fact that the shipments were made "freight pre-paid" also renders HMC liable. The term 'freight prepaid' "is not a receipt that the freight charges have actually been paid out but only means that the shipper **will pay** the charges at a later date. This in essence is an extension of credit to the shipper to facilitate the movement of cargo." *Sea-Land Services, Inc. v. H. Brothers Corporation*, 1985 U.S. Dist. LEXIS 17813, *6 (S.D.N.Y. 1985) (emphasis added). *See also Maersk, Inc. v. Alan Marketing, Inc.*, 1998 U.S. Dist. LEXIS 4816, *2 (S.D.N.Y. 1998) (observing that it is customary in the shipping business that bills of lading are marked "freight prepaid" when shipper will pay the ocean freight); *Maersk, Inc. v. Atcom Industries*, 73 F. Supp.2d 387, 389-91 (S.D.N.Y. 1999) (holding that carrier could recover "freight prepaid" charges from the shipper and the shipper's principals). These BOLs, which were made 'freight prepaid,' were made based upon HMC's credit, not that of its Chinese customers, who were unknown to Maersk.

---

[8] "Under well-established principles of admiralty law, demurrage is 'extended freight.' Accordingly, one who undertakes to guaranty the costs of ocean freight is secondarily liable for any demurrage incurred." *Yang Ming Marine Transport Corporation v. Okamoto Freighters Ltd.*, 259 F.3d 1086, 1093 n.1 (9th Cir. 2001) (citing *Ocean Trans. Line, Inc. v. Am. Philippine Fiber Indus., Inc.*, 743 F.2d 85, 92 (2d Cir. 1984)).

Moreover, a shipper is not relieved of liability because he didn't read or negotiate the "Freight and Charges" provision. A shipper is charged with notice of and held to the terms of the bill of lading:

> [E]ven if [Shipper] never saw the bill of lading, this would not absolve him from liability. In analogous cases courts have held that a forum selection clause in a bill of lading is binding on a defendant even if the defendant did not consent to its terms or sign it. *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 1997 U.S. Dist. LEXIS 1387 (S.D.N.Y. Sept. 12, 1997). Similarly, courts have held that passengers on a ship may be charged with notice of conditions of the ticket even if the passenger never has the ticket in his possession. *Marchewka v. Bermuda Star Lines*, 937 F.Supp. 328, 333 (S.D.N.Y. 1996); *Kientzler v. Sun Line Greece Spec. Shipping Co.*, 779 F. Supp. 342, 346 (S.D.N.Y. 1991); *DeCarlo v. Italian Line*, 416 F. Supp. 1136 (S.D.N.Y. 1976).

*Maersk, Inc. v. Alan Marketing, Inc.*, 1998 U.S. Dist. LEXIS 4816, *4 -5 (S.D.N.Y. 1998). Arguments to escape liability from the plain terms of the standard "Freight and Charges" provisions of the bills of lading, including claims that bills of lading are adhesionary contracts or that shipper never actually read the bills of lading prior to suit, have been roundly rejected. *See, e.g., Sea-Land Service, Inc. v. Landis*, 1996 U.S. Dist. LEXIS 35, *11 (E.D. Penn. 1996) (rejecting adhesionary contract claim); *Maersk, Inc. v. Alan Marketing, Inc.*, 1998 U.S. Dist. LEXIS 4816 at *4 -5 (S.D.N.Y. 1998) (rejecting "I didn't read it" defense).

Finally, HMC is liable for the demurrage and diversion charges because it expressly and repeatedly agreed to pay them, inducing Maersk to act in reliance and to release the cargo to HMC's Chinese customer.  *See* Exhibits "5", "6", "13" and "14."  Even if HMC were not otherwise liable, despite the clear contractual language and case law discussed above, it cannot avoid liability following is guaranty that it would pay the charges.

For all of these reasons, Maersk is entitled to summary judgment against HMC for the unpaid demurrage and diversion charges on 1026 and 2109 in the amount of $54,311.05.

### B.    HMC Is Liable For The Admittedly Unpaid Ocean Freight On BOL Nos. 1026 And 2009.

HMC does not dispute that it owes, and simply failed to pay, the ocean freight portion of BOL No. 1026 and all of BOL No. 2009, in the total amount of $18,875.36.  In fact, HMC already tried to pay these sums in an unsuccessful attempt to compromise Maersk's entire claim.  HMC does not have and does not claim any defense as to these amounts.  Even if a defense were advanced, the case law described above confirms that Maersk is entitled to judgment as a matter of law in the amount of $18,875.36.

## C.    HMC Is Liable For The Tariff Rate On BOL 5274.

The Maersk tariff in effect at the time of the shipment in 5274 provided a basic freight rate of $1,450.00 per container, *i.e.* $750 more than HMC paid. HMC's contention that its shipping rate is controlled by a previous quote (for which it produced no evidence) is without merit.

Freight charges are prepared in accordance with the rates contained in tariffs, tariffs which Maersk must keep open to public inspection in an automated tariff system. *See* 46 U.S.C. § 1707(a)(1). "These rates depend upon the ports of loading and ports of destination along with the weight or cubic measure of the cargo. Further, the tariffs are a listing compiled by conferences of organizations licensed by the Federal Maritime Commission . . . ." *Sea-Land Services, Inc. v. H. Brothers Corporation*, 1985 U.S. Dist. LEXIS 17813, at *6 (S.D.N.Y. 1985). Indeed, Maersk is expressly prohibited from allowing "any person to obtain transportation for property at less than the rates or charges established by the carrier in its tariff." 46 U.S.C. § 1709(b)(1). The tariff regime in the Shipping Act of 1984 governing foreign shipments "seek[s] to eliminate unjust price discrimination by requiring that carriers file tariffs and strictly observe their published rates." *Sea-Land Service, Inc. v. Murrey & Son's Co. Inc.*, 824 F.2d 740, 744 (9th Cir. 1987).

Thus, even assuming that HMC struck a deal with Maersk to pay less than the published rate of $1,450.00 per container (which it did not), Maersk is mandated

by law to charge the published tariff rate. *See American Transport Lines, Inc. v. Wrves*, 985 F.2d 1065, 1067 (11th Cir. 1993) (Once the tariff is approved, "the rate must be charged and paid regardless of mistake, inadvertence or contrary intention of the parties."). Because the tariff in effect at the time the transportation was provided requires payment of an additional $750.00, Maersk is entitled to judgment against HMC as a matter of law in this amount.

### D.     Maersk Is Entitled To Prejudgment Interest.

Maersk is entitled to an award of prejudgment interest on all unpaid ocean freight and charges. "When a court is sitting in admiralty, the jurisprudential rule is that prejudgment interest should be awarded." *Sea-Land Service, Inc. v. Landis*, 1996 U.S. Dist. LEXIS 35, *7-8 (E.D. Penn. 1996). "In admiralty, prejudgment interest must be granted unless peculiar circumstances justify its denial." *Vance v. American Hawaii Cruises*, 789 F.2d 790, 795 (9th Cir. 1986). *See also Guangzhou Ocean Shipping Co. v. G.T. Int'l, Inc.*, 1997 AMC 241, 245 (C.D. Cal. 1996) (awarding ocean carrier prejudgment interest on unpaid ocean freight).

In this case, Maersk has had to wait to receive payment for its services for two years. The transportation in each of the four BOLs was provided in December 2003 and January 2004. The cargo was delivered in China by February 2004. There was no good reason that Maersk wasn't paid other than (1) HMC's stubborn refusal to pay the demurrage, diversion and tariff rate on BOLs 1026, 2109 and 5274, and its

oversight with respect to the ocean freight on BOL 2009 and 1026. No peculiar circumstances justify denial of interest in this case.

When awarding prejudgment interest on unpaid ocean freight to an ocean carrier, the District Court may either use either the rate provided by the law of the state in which the Court sits or the rates prescribed in 28 U.S.C. § 1961. *H & A Trading Co., Inc. v. Margo Farms Del Caribe, Inc.*, 1992 AMC 2238 (D.P.R. 1991). As a matter of convenience to the parties and the Court, Maersk seeks prejudgment interest at the statutory rate of 10%, pursuant Haw. Rev. Stat. § 478-2. Maersk should be awarded prejudgment interest in the amount of $14,787.28.[9]

### E.    Maersk Is Entitled To Recover Attorneys' Fees And Costs.

In cases enforcing the language contained in Paragraph 14.4 of the BOLS (providing for recovery of attorneys fees and costs), Courts have repeatedly awarded attorneys' fees and costs to the carrier. *See, e.g., Maersk, Inc. v. Alan Marketing, Inc.*, 1998 U.S. Dist. LEXIS 4816, *9 (S.D.N.Y. 1998); *Sea-Land Service, Inc. v. Landis*, 1996 U.S. Dist. LEXIS 35, *12 (E.D. Penn. 1996); *Sea-Land Services, Inc. v. Amstar Corporation*, 690 F. Supp. 246, 250 (S.D.N.Y. 1988); *Sea-Land Services, Inc. v. H. Brothers Corporation*, 1985 U.S. Dist. LEXIS 17813, *16 (S.D.N.Y. 1985).

---

[9] $73,936.41 x 10%/year = $7,393.64 x 2 years = $14,787.28.

Therefore, Maersk is entitled to an award of its attorneys' fees and costs incurred in recovering the unpaid ocean freight and charges.[10]

## V.    CONCLUSION

Based on the foregoing reasons and authority, Maersk respectfully requests this Honorable Court grant summary judgment in favor of Maersk and against HMC in the amount of $73,936.41 in unpaid ocean freight and charges and $14,787.28 in prejudgment interest, as well as an award of its attorneys' fees and costs.

DATED:  Honolulu, Hawaii, January 17, 2006.

DAMON KEY LEONG KUPCHAK HASTERT


GREGORY W. KUGLE
JAMESNER A. DUMLAO

Attorneys for Plaintiff
MAERSK INC.

---

[10]Upon the granting of summary judgment, Maersk will submit a declaration of counsel establishing the amount of attorneys' fees and costs it has incurred in this action.

185149.1/GWK                                -22-

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MAERSK INC., | CIVIL NO. CV 04-00652 (HG/BMK) |
| Plaintiff, | (In Admiralty) |
| vs. | **CERTIFICATE OF SERVICE** |
| HARTMANN METALS CORPORATION, | |
| Defendant. | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date a true and correct copy of the foregoing document was duly served upon the following individual via hand delivery, to their last known address as follows:

CYNTHIA A. FARIAS, ESQ.
Dillingham Transportation Building
701 Bishop Street
Honolulu, Hawaii 96813
Attorney for Defendant
 HARTMANN METALS CORPORATION

DATED:  Honolulu, Hawaii, January 17, 2006.

DAMON KEY LEONG KUPCHAK HASTERT

GREGORY W. KUGLE
JAMESNER A. DUMLAO

Attorneys for Plaintiff
 MAERSK INC.