Of Counsel:
DAMON KEY LEONG KUPCHAK HASTERT
Attorneys at Law
A Law Corporation

GREGORY W. KUGLE      6502-0
gwk@hawaiilawyer.com
JAMESNER A. DUMLAO    7109-0
jad@hawaiilawyer.com
1600 Pauahi Tower
1001 Bishop Street
Honolulu, Hawai`i 96813
http://www.hawaiilawyer.com
Telephone: (808) 531-8031
Facsimile:  (808) 533-2242

Attorneys for Plaintiff
  MAERSK INC.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 1 7 2006

at 3 o'clock and 22 min. P M
SUE BEITIA, CLERK

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MAERSK INC.,<br><br>            Plaintiff,<br><br>    vs.<br><br>HARTMANN METALS<br>CORPORATION,<br><br>            Defendant. | CIVIL NO. CV 04-00652 (HG/BMK)<br>(In Admiralty)<br><br>**PLAINTIFF MAERSK INC.'S SEPARATE CONCISE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; DECLARATION OF PAMELA LAKE; DECLARATION OF GREGORY W. KUGLE; EXHIBITS "1"-"17"; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE**<br><br>DATE:  February 21, 2006<br>TIME:  9:45 a.m.<br>JUDGE: Hon. Helen Gillmor |

## PLAINTIFF MAERSK INC.'S SEPARATE CONCISE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to L.R. 56.1, Plaintiff MAERSK, INC. ("Maersk"), through its attorneys, Damon Key Leong Kupchak Hastert, submits this Concise Statement of Facts in support of its Motion for Summary Judgment against Defendant HARTMANN METALS CORPORATION ("HMC"), filed contemporaneously herewith.

| FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 1. Maersk is an ocean carrier that provides ocean transportation between Hawaii and Asia. | Declaration of Pamela Lake ("Lake Decl.") at ¶ 3. |
| 2. HMC is a scrap metal dealer that buys scrap metal in Hawaii and resells it to customers in China. Its President, sole shareholder and sole employee is Hanni Hartmann ("Mr. Hartmann"). | Deposition of Hanni Hartmann ("Hartmann Depo.") at 26:4-8; 27: 7-9; Deposition of Jeffrey Forrest ("Forrest Depo.") at 33:25 - 34:10. |
| 3. This case involves four Bills of Lading ("BOL"): SJ1D42109 ("2109"); SJ1321026 ("1026"); SJ1D42009 ("2009"), and; SJ1D45274 ("5274"). Each BOL prepared by Maersk contains identical language on the back. HMC did not pay $73,936.41: $23,814.09 (2109); $40,807.32 (1026); $8,565.00 (2009) and $750.00 (5274). | Lake Decl. at ¶ 4; Exhibits "1"-"4". |
| 4. For each BOL, HMC would provide the essential information to Maersk, such as the number and contents of the containers, the destination, and the party to whom the containers should be delivered at the destination. Each BOL was made "freight prepaid," which means payment is the responsibility of the shipper rather than the consignee. | Hartmann Depo. at 92:23-94:20; 111:6-11; 121:25-122:5; 126:11-24; 169: 13-21; Exs. 1, 2, 3 & 4. |
| 5. HMC entered a contract with Jade Alliance/Lee Cheung ("Jade Alliance"), its customer in China, for the sale of scrap metal located in Hawaii for | Hartmann Depo. at 72:3-11; 73: 21-75:24; 143: 12-21; 166:24-167:13. |

delivery in China. Mr. Hartmann did not know whether his contract was with Jade Alliance or Lee Cheung, two Chinese companies, but he viewed them as the same. HMC does not provide its contracts to Maersk because that information is not relevant to HMC's business with Maersk.

6. BOL 2109 and 1026 were part of the same "booking" made by HMC for its contract with Jade Alliance. Both originated in Hilo and were originally destined for Shanghai. A "booking" occurs when HMC requests that Maersk reserve space to transport containers from one location to another.

Hartmann Depo. at 120:18-23; 128:17-24; 129:2-16; 134:9-18.

7. BOL 2109 involved the transportation of 7 containers of steel scrap bundles, which sailed from Hawaii on the Horizon Spirit in late December 2003. BOL 1026 involved the transportation of 13 containers of steel scrap bundles, which sailed from Hawaii on the Horizon Enterprise in early January 2004. Mr. Hartmann does not recall why he didn't put all 20 containers on one ship.

Hartmann Depo. at 130:21-131:1; 167:24-168:14; Exs. 1 & 2.

8. Jade Alliance then requested that HMC divert the cargo from Shanghai to Chiwan. HMC assured Maersk that HMC would pay the diversion costs associated with the change. Jade Alliance then requested that HMC again divert the cargo, this time from Chiwan to Hong Kong.

Hartmann Depo. at 77:8-78:3; 148:19-25; 165:20-166:2; Exs. 5 & 6; Lake Decl. at ¶ 4; Ex. 7; Ex. 8; Hartmann Depo. at 184:15-25.

9. In addition to changing destinations, HMC also changed the party who was authorized to receive the cargo from Minn Metals in Beijing to Sing Fung Trading Company in Hong Kong. By the end of January 2004, the cargo was sitting in Maersk's equipment and yard in Hong Kong, but the "notify" information provided to Maersk by HMC was incorrect. Maersk had to request accurate information from HMC.

Hartmann Depo. at. 169:3-24; 170:5-12; 172:22-25; 178:1-179:8; Ex. 9; Ex. 10.

| | |
|---|---|
| 10. Maersk notified HMC that storage and destination charges were being incurred. HMC asked Maersk to provide it with a summary of the charges that were accruing on the cargo. Maersk responded by providing HMC a summary and explanation of the charges for the changes of destination and the demurrage. | Hartmann Depo. at 184:15-20; 185:14-186:8; 188:9-24; Exs. 11 & 12; Lake Decl. at ¶ 5. |
| 11. In response to Maersk's request that HMC confirm that it would pay the outstanding destination and demurrage charges, Mr. Hartmann confirmed in an email that HMC would do so and would the "settle" with Jade Alliance. Even as HMC and Jade Alliance worked to get correct information to Maersk so the final BOLs could be prepared and the cargo released to HMC's customer, HMC continued to assure Maersk that HMC would pay the charges. | Hartmann Depo. at 194:2-16; Exs. 13 and 14. |
| 12. HMC admits that its repeated promises to pay Maersk the diversion and demurrage charges were made so that Maersk would release the cargo to Jade Alliance in Hong Kong. | Hartmann Depo. at 206:2-19. |
| 13. HMC's customer, Jade Alliance, stiffed HMC. HMC tried unsuccessfully to recover from Jade Alliance. Unable to settle with Jade Alliance, HMC decided to stiff Maersk. | Hartmann Depo. at 207:21-208:14; Ex. 13. |
| 14. Rather than pay Maersk invoice by invoice, HMC frequently paid Maersk with lump sum payments that cannot be traced to any particular BOL. | Deposition of Dora Matsumura ("Matsumura Depo.") at 41:1-23; 42:2-7; 44:25-45:5; 47:17-24. |
| 15. In early 2004, after Maersk notified HMC that it had an unpaid balance of $73,936.41, Mr. Hartmann directed his bookkeeper, Ms. Matsumura, to reconcile the account and determine what HMC owed to Maersk. Because there was no way for HMC to correlate all of its payments with Maersk invoices, Ms. Matsumura could only use HMC's accounting software to compare Maersk invoices with HMC's payments. This | Hartmann Depo. at 64:7-20; Matsumura Depo. at 26:6-10; 26:21-27:4; 29:10-18; 30:4-22; Ex. 15. |

| | |
|---|---|
| analysis was artificially limited to invoices and payments made in and after October 2003, when the software was acquired. | |
| 16. Ms. Matsumura determined that HMC owed Maersk ocean freight in the amount of $18,875.36. She determined that HMC did not pay Maersk ocean freight on two BOLs: 2009 and 1026. Therefore, she recommended HMC pay $18,875.36 to Maersk, and Mr. Hartmann agreed with her recommendation. Maersk, however, did not accept this attempted compromise and returned the payment. | Matsumura Depo. at 51:1-9; 66:16-72:10; Ex. 15; Ex. 16; Hartmann Depo. at 66:13-22. |
| 17. HMC admits that it paid only $10,775.00 on BOL 5274. This is $750 less that the ocean freight owed based upon the tariff in effect at the time the shipment was made. HMC contends it should only have to pay the ocean freight rate in effect at the time of its "booking," not the tariff rate in effect on the date the shipment was made. | Hartmann Depo. at 210:1-211:24; 212:14-22; Matsumura Depo. at 81:10-82:16. |
| 18. The containers in 5274 were loaded on board the Horizon Trader in Hawaii on January 7 and 8, 2004. The basic freight rate is determined by tariff. Tariff MAEU-167, the governing tariff in effect on the date of shipping, provided a basic freight rate of $1,450.00 per container. The tariff was available for viewing in an automated tariff system maintained by Maersk. | Lake Decl. at ¶ 6; Ex. 17. |

DATED: Honolulu, Hawaii, January 17, 2006.

DAMON KEY LEONG KUPCHAK HASTERT

*/s/ Gregory W. Kugle*

GREGORY W. KUGLE
JAMESNER A. DUMLAO

Attorneys for Plaintiff
MAERSK INC.