CYNTHIA A. FARIAS #4108
Dillingham Transportation Building
701 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 533-8887
Facsimile: (808) 545-4015

Attorney for Defendant
HARTMANN METALS CORPORATION

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 0 6 2006

at 4 o'clock and 17 min. P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CV 04-00652 HG-BMK

| | |
|---|---|
| MAERSK, INC.<br><br>Plaintiff,<br><br>vs.<br><br>HARTMANN METALS CORPORATION,<br><br>Defendant. | DEFENDANT HARTMANN METALS CORPORATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFF MAERSK, INC.'S MOTION FOR SUMMARY JUDGMENT; CERTIFICATE OF SERVICE<br><br>Hrg. Date: February 21, 2006<br>Time: 9:45 a.m.<br>Judge: Helen Gillmor |

DEFENDANT HARTMANN METALS CORPORATION'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF MAERSK, INC.'S
MOTION FOR SUMMARY JUDGMENT

Defendant HARTMANN METALS CORPORATION ("HMC"), by and through its undersigned counsel, hereby submits its Memorandum in Opposition to Plaintiff MAERSK, INC.'s Motion for Summary Judgment filed January 17, 2006. HMC maintains that summary judgment is not appropriate because there are genuine issues of material fact in the following areas: (1) what Bills of Lading are at

issue; (2) the balance outstanding on each invoice; and (3) whether HMC owes demurrage and destination charges.

## I. FACTUAL BACKGROUND

Defendant Hartmann Metals Corporation (HMC) is a Hawaii Corporation in the business of exporting scrap metal. (See Declaration of Hanni Hartmann attached hereto). Hanni Hartmann is the president of HMC. Over the past 4 years, HMC hired MAERSK to ship containers of metal to various international ports, including Hong Kong and Shanghai. HMC provided steady and reliable business to MAERSK, shipping many containers of metal and paying MAERSK over $300,000 in freight and related charges.

In accordance with the usual and customary procedure in the shipping industry, HMC as the shipper paid freight costs either before the cargo was loaded on the ships, or while the cargo is in transit. When the cargo arrived at its destination, it was claimed by the consignee or notify party, who paid any additional charges demurrage (storage) to obtain release of the merchandise.

This dispute arose over several Bills of Lading which MAERSK claims were not fully paid. From the outset of the dispute, HMC had difficulty obtaining from MAERSK a clear picture of what monies were allegedly owed and under which Bills of Lading. Dora Matsumura, HMC's bookkeeper, calculated at one point that HMC owed $18,875.36, which HMC then tendered. However, MAERSK refused to accept the funds. In addition to the freight charges MAERSK alleges are owed, there is a substantial sum in demurrage charges which HMC disputes.

MAERSK now seeks to have the Court decide the case by summary judgment. However, as will become evident, questions of fact exist which render summary judgment inappropriate.

## II.   ARGUMENT

### A.   A genuine issue of material fact exists concerning which Bills of Lading are at issue.

HMC agrees with Maersk that a bill of lading is a contract of carriage between the shipper and the carrier. (MEARSK Memorandum in Support of Motion for Summary Judgment at p. 3). Therefore, each bill of lading is a <u>separate</u> contract of carriage. MAERSK has been inconsistent in deciding which contracts were allegedly breached.

In July or August 2004, HMC received a statement of account dated July 26, 2004 (Exhibit "A"). The July statement listed the following:

| SJ1D42109 | $22,899.09 |
| SJ1321026 | $40,807.32 |
| SJ1D51556 | $3,410.00 |
| SJ1D51550 | $3,410.00 |
| SJ1D52576 | $3,410.00 |
| SJ1426108 | $2,661.00 |
| SJ1435563 | $2,825.00 |
| TOTAL | $79,422.41 |

The parties do not controvert that Bills of Lading 51556, 51550, 52576, 426108 and 435563 have been paid and are not at issue here. Therefore,

3

by MAERSK's own internal document, only two bills of lading are outstanding, 42109 and 321026.

However, in the motion for summary judgment, MAERSK alleges that four Bills of Lading are at issue as follows:

| SJ1D42109 | total: $54,311.05 demurrage $10,310.36 freight |
|---|---|
| SJ1321026 | |
| SJ1D42009 | $8,565.00 |
| SJ1D45274 | $750.00 |

MAERSK produces no documentation showing that 42009 and 45274 are still outstanding. It therefore appears by MAERSK's own records that the only outstanding Bills of Lading are 42109 and 321026. At the very least, the discrepancies raise an issue of fact as to which Bills of Lading remain unsatisfied and, as such, which contracts of carriage were breached.

### B. A genuine issue of material fact exists as to how much is allegedly owed.

According to MAERSK's internal document, i.e. the July 26, 2004 statement, HMC owed the sum of $63,706.41. However, MAERSK's complaint and motion for summary judgment alleges that HMC owes it $73,936.41. MAERSK can produce no documentation concerning the difference of $10,230.

Instead, MAERSK relies on the testimony of HMC's bookkeeper, Dora Matsumura, to prove the monies owed. According to the motion, HMC admitted it

4

failed to pay destination and demurrage charges in the amount of $10,310.36 under Bill of Lading 321026, $23,814.09 under Bill of Lading 42109; $8,565 under Bill of Lading 42009; and $750 under 45274. MAERSK cites the testimony of Ms. Matsumura as support for these assertions. When Ms. Matsumura's deposition testimony is read it becomes clear that she did not make any such admissions.

In her deposition, Ms. Matsumura testified that she compared what was billed by MAERSK with what HMC paid and arrived at a balance of $18,875.36 which she recommended HMC pay (Deposition of Dora Matsumura attached to SCSF at 51:109; Letter from Dora Matsumura to Andrea Jinks of MAERSK attached to Memorandum in Support as Exhibit "15"). In fact, HMC did tender payment in the amount of $18,875.36 on April 9, 2004 via wire transfer from Bank of Hawaii. (See Receipt from Bank of Hawaii attached hereto as Exhibit "B") However, the payment was rejected by MAERSK some time later.

Ms. Matsumura clearly did _not_ admit that HMC still owes $8,565 under Bill of Lading 42009. Her testimony cited by MAERSK simply cannot be read as an admission that Bill of Lading 42009 remains outstanding.

As to Bill of Lading 321026, Ms. Matsumura testified that she determined that $10,310.36 of the total charge was unpaid freight and $30,497.01 was outstanding demurrage. Ms. Matsumura's calculation was incorrect. In fact, the demurrage and destination charges reflected in Bill of Lading 321026 are as follows: $400 change of destination fees, administrative fees of

5

$1,295 (5,460HKD), demurrage charges of $13,099.62 (19,5370HKD) and a destination document fee of $14.69 for a total of $14,809.31.[1]  That MAERSK is now saying that $30,497.01 in demurrage charges exist under Bill of Lading 321026 only underscores the necessity of bringing this matter before the trier of fact.

As to Bill of Lading 42109, Ms. Matsumura testified that she believed HMC did not pay the sum of $23,814.09.[2]  While most of HMC's payments were specific to particular Bills of Lading, some were not.  Therefore, since MAERSK decided how and where to credit payments, Ms. Matsumura's determination concerning the specific breakdown of the balances was speculation.  And, since Ms. Matsumura was not dealing with the demurrage charges, her testimony concerning the amount of demurrage and destination charges incurred by MAERSK is not probative.

MAERSK appears to be confused about what is owed under these two Bills of Lading.  In its motion MAERSK claims that HMC owes the sum of $54,311.05 in destination and demurrage charges for Bills of Lading 42109 and 321026.  In fact, according to the invoices, the total demurrage charges are

---

[1] Based upon the exchange rate of 7.38 which was applied by MAERSK at the time of the shipments.

[2] It should be noted that this amount, which MAERSK now seeks pursuant to its Motion for Summary Judgment, differs from the amount reflected in MAERSK's July 26, 2004 invoice, further supporting the argument of a question of fact concerning what is owed.

approximately $38,051.09. (See Exhibit "C", amended Freight Invoice for Bill of Lading 42109 and Exhibit "D", amended Freight Invoice for Bill of Lading 321026) Administration fees for the two bills of lading are $1,992.34 (15,600HKD). MAERSK does not document or support the extra destination and demurrage charges, nor does it explain why the figures differ from what is reflected in the Bills of Lading.

As to Bill of Lading 45274, HMC *does* admit it paid freight at a cumulative rate of $750 less than MAERSK demands. However, HMC does *not* admit that the $750 remains outstanding because, again, MAERSK decided unilaterally where to credit HMC's payments. In addition, Bill of Lading 45274, which was originally billed to HMC in February of 2004, is not on the July 2004 statement.

Based upon the inconsistent and unsubstantiated claims for payment, it is apparent that there is a genuine issue of material fact concerning how much monies are owed to MAERSK, and for which contracts.

### C.    Genuine issues of material fact exists regarding whether HMC owes any demurrage charges.

HMC admits that it did not pay the demurrage charges under Bills of Lading 321026 and 42109. However, HMC maintains that it does not owe these charges to MAERSK.

In December of 2003, HMC shipped seven containers of scrap metal to China under Bill of Lading 42109. The seven containers were loaded onto

MAERSK's vessel HORIZON SPIRIT, headed originally for Shanghai, on December 30, 2003. (See Exhibit 1 of Plaintiff's SCSF).

The cargo was discharged in Hong Kong on January 12, 2004 (See email message dated 1/16/04 concerning email from Carlos Sullivan of Mearsk attached as Exhibit "E"). HMC then received a request from its buyer to divert the cargo to Chiwan, a smaller port in China. In order to process the diversion request, MAERSK asked HMC for a written agreement that HMC would pay certain specific charges, namely a $100 per container late declaration charge plus a $200 diversion fee. MAERSK advised HMC that until it received written acceptance of the charges, MAERSK could not update the system showing Chiwan as the delivery destination. HMC sent the confirmation and the cargo was scheduled to be diverted to Chiwan.

Under Bill of Lading 321026, thirteen containers were loaded onto M/V HORIZON ENTERPRISE headed for Hong Kong on January 13, 2004. (Exhibit 2 to SCSF). Like the 7 containers under 42109, the cargo was diverted to Chiwan upon request of the consignee. As with the 7 containers under 42109, HMC had to agree in writing to the nominal additional fees for the diversion.

The consignee, Jade Alliance, then requested that the cargo be diverted again. As the shipper on record, HMC communicated with MAERSK about the 2nd diversion. Apparently, there was confusion and frustration between the parties concerning the diversions. Numerous email and telephone communication occurred regarding the mechanics of the diversions and who were the correct

8

parties to notify. In addition, HMC was finding it difficult to obtain the original Bills of Lading for 42109 and 321026. The Original Bills of Lading were necessary to enable the consignee to retrieve the cargo. This caused additional delay which resulted in added demurrage charges.

In conversations and emails between Pam Lake of MAERSK and Hanni Hartmann of HMC, MAERSK made it clear the diversion of the cargo could not be processed unless HMC conveys unconditional acceptance of the charges. (See Exhibit 7 to SCSF). Anxious to get the cargo to its destination and properly processed, HMC communicated acceptance of the charges. However, Mr. Hartmann made it clear in telephone conversations with Ms. Lake that HMC's acceptance of the charges was only to facilitate processing the changes caused by the diversions. It was HMC's expectation, based upon customary practice and the course of dealing between the two companies, that all additional charges would be presented to the consignee prior to release of cargo. In fact, HMC did not think it possible that MAERSK would release the cargo without full payment by the consignee.

Unfortunately, MAERSK did not advise Jade Alliance of the full additional charges. Instead, MAERSK collected only 3 days demurrage from the consignee before releasing the cargo. (See Exhibit "F", log entries from Maersk concerning 42109).

HMC was unaware that the demurrage charges were not paid until months later, when MAERSK communicated with HMC and Ms. Dora Matsumura

9

concerning an outstanding balance. Had MAERSK notified HMC on the day the cargo was to be released, HMC could have made arrangements with the consignee for payment.

On June 2, 2004, Ms. Dora Matsumura forwarded an email message to Sherry Potter-Ridlon, the Receivables Management Representative stating that HMC had made a payment of $18,875.36 and that HMC's account was current. (See Email from Dora Matsumura to Sherry at MAERSK dated 6/2/04 attached as Exhibit "G"). Ms. Matsumura referenced a telephone conversation she had with Andrea Jinks of MAERSK, in which Andrea agreed that HMC should not be responsible for the additional charges under Bills of Lading 42109 and 321026.

While HMC acknowledges that the shipper may be responsible for demurrage and similar charges, the course of dealing between the parties led HMC to believe that MAERSK would collect all sums from the consignee. Also, while HMC did agree to cover the additional charges, it did so only because MAERSK was demanding that HMC accept responsibility for the payments or, essentially, be unable get the cargo to the consignee. Finally, MAERSK's untimely, inconsistent and incomplete billing practices added to the confusion and delay.

HMC contends that there is a question of fact as to whether there was an understanding between Mr. Hartmann of HMC and Pam Lake that the charges were being accepted by HMC purely to facilitate the processing of the diversion request. There is also a question of fact concerning whether MAERSK's failure to follow its usual and customary practice of collecting demurrage charges from the

consignee amounted to a breach of the contract for carriage. Another question of fact exists as to whether the actions of MAERSK in connection with the processing of the diversion request delayed the cargo such that unnecessary demurrage charges accrued. Finally, there is a question of fact as to whether MAERSK's failure to timely notify HMC of the outstanding demurrage charges constitutes a waiver of the charges, breach of the contract or an estoppel precluding MAERSK from collecting the monies.

### D.    Prejudgment interest, if any, should not be awarded on the sums tendered to MAERSK.

The Court has discretion to award prejudgment interest and to decide the commencement date of the interest  It is undisputed that HMC tendered payment of the amount of $18,875.36 on April 8, 2004. The tender was not made pursuant to any litigation and MAERSK could have accepted the funds and simply advised HMC that additional monies were due. Therefore, there should be no prejudgment interest attached to the $18,875.36.

### E.    Attorneys Fees and Costs

Should the Court grant MAERSK's summary judgment on only a portion of its claim of $73,936.41, HMC requests that the Court find that HMC is the prevailing party as to the remainder of the claim. HMC requests an award of costs and fees as to the portion of MAERSK's claim upon which MAERSK does not prevail.

### III. SUMMARY

There are numerous questions of fact in this matter which must be resolved by the trier of fact. For this reason, HMC respectfully requests that the Court deny MAERSK's motion in its entirety.

DATED:   Honolulu, Hawaii, February 6, 2006.

_____
Cynthia A. Farias
Attorney for Defendant
HARTMANN METALS CORPORATION