

ORIGINAL

Of Counsel:
DAMON KEY LEONG KUPCHAK HASTERT
Attorneys at Law
A Law Corporation

GREGORY W. KUGLE          6502-0
gwk@hawaiilawyer.com
JAMESNER A. DUMLAO        7109-0
jad@hawaiilawyer.com
1600 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813
http://www.hawaiilawyer.com
Telephone: (808) 531-8031
Facsimile:  (808) 533-2242

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 1 4 2006

at 12 o'clock and 00 min. P M
SUE BEITIA, CLERK

Attorneys for Plaintiff
   MAERSK INC.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MAERSK INC.,<br><br>              Plaintiff,<br><br>vs.<br><br>HARTMANN METALS<br>CORPORATION,<br><br>              Defendant. | CIVIL NO. CV 04-00652 (HG/BMK)<br>(In Admiralty)<br><br>**PLAINTIFF MAERSK INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED JANUARY 17, 2006; DECLARATION OF JAMESNER A. DUMLAO; EXHIBIT "18"; CERTIFICATE OF SERVICE**<br><br>DATE:    February 21, 2006<br>TIME:    9:45 a.m.<br>JUDGE:   Hon. Helen Gillmor |

# PLAINTIFF MAERSK INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED JANUARY 17, 2006

Plaintiff MAERSK INC. ("Maersk"), through its attorneys Damon Key Leong Kupchak Hastert, files its Reply Memorandum ("Reply") in support of its Motion for Summary Judgment, filed January 17, 2006 ("Motion"). This Reply responds to Defendant HARTMANN METALS CORPORATION ("HMC")'s Memorandum In Opposition to the Motion, filed February 6 2006 ("Opposition") and HMC's Separate and Concise Statement of Facts in Opposition to the Motion, filed February 9, 2006 ("HMC's SCSF").[1]

## I.  INTRODUCTION

HMC's Opposition and SCSF are a strained and ineffective attempt to create genuine issues of fact where none exist. Not only do the material undisputed facts in Maersk's SCSF still establish Maersk's entitlement to summary judgment, but HMC's allegedly disputed facts are (a) immaterial and/or (2) not supported by admissible evidence. Moreover, HMC's Opposition failed entirely to address either the clear and unambiguous language of the BOLs, or the substantial case law establishing its liability <u>as a matter of law</u> for the ocean freight and charges. HMC does not contend that it needs additional discovery, nor could it, as the discovery cut-off has passed. On this record, HMC is not entitled to a trial and Maersk is entitled summary judgment.

---

[1] HMC's Opposition was filed without the SCSF, in contravention of L.R. 56.1(b). The Court allowed HMC additional time to file its SCSF, and allowed Maersk until February 14, 2006, to file its Reply.

185974                -2-

## II.   HMC Concedes All Material Facts Are Undisputed.

Significantly, HMC does not dispute that all material facts are undisputed. The "partial" disputes that HMC advances in its SCSF are either (a) not material or (b) not supported by admissible evidence, as demonstrated below.

HMC does not dispute Maersk's SCSF ¶¶ 1 or 2; its "partial" dispute as to other sources of its scrap metal is immaterial for purposes of this suit, which involves shipments of HMC cargo from Hawaii to China.

With respect to Maersk's SCSF ¶ 3, HMC does not dispute the BOLs are attached, nor does it dispute the language of the BOLs. Rather, its only dispute is a conclusory contention that it does not owe $73,936.41 on the four BOLs. The only evidentiary support cited is the argument of counsel in its Opposition, *see* HMC's SCSF at ¶ 3, which does not satisfy HMC's burden. "Genuine issues of factual issues must be supported by significant probative evidence." *Tran v. State Farm Mut. Auto Ins. Co.*, 999 F. Supp. 1369, 1372 (D. Hawai`i 1999). "Legal memoranda . . . are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *Id.*

With respect to Maersk's SCSF ¶ 4, HMC concedes that for each BOL, it was supposed to provide the essential information to Maersk, such as who was authorized to pick up HMC's cargo in China. This is significant because it negates the argument in HMC's Opposition that the issuance of BOLs was delayed by Maersk; to

the contrary, the undisputed facts and exhibits confirm Maersk was provided bad information by HMC and its Chinese customer.

Moreover, HMC also concedes that each shipment was made "freight prepaid." Its only quibble is with respect to the term "freight prepaid." This industry term, however, is defined by law and means that the shipper is responsible for the charges. *See* Maersk's Memorandum in Support at p.16. Mr. Hartmann's testimony, which HMC cites, does not contract this. To the contrary, he confirms it: "What it shows on this bill of lading, its all in the column prepaid, **this is my responsibilities**. Under the column collect which we do not show anything here, that is to be paid by receiver." Hartmann Depo. at 93:14-17 (emphasis added). Moreover, his testimony has nothing to do with the industry term, but merely with his claimed "practice" to try to pay ocean freight at or near the time of sailing.[2]

HMC admits Maersk's SCSF ¶¶ 5-8 are undisputed. HMC admits it requested the transportation in BOLs 2109 and 1026; its contracts with its China customers are immaterial to Maersk; both shipments sailed in December 2003 and January 2004; HMC's customer requested the 20 containers be diverted twice, from Shanghai, to Chiwan, to Hong Kong, and; "HMC assured Maersk that HMC would pay

---

[2] A "practice" which, as to Maersk, is belied by Maersk's Exhibit 15 and HMC's Exhibit F, both of which show that with a single exception, when HMC paid a Maesk invoice, payment was usually made approximately two weeks after the date of the invoice (and invoices are issued after the vessel sails). The sole exception is SJID 5274, which HMC alleges was invoiced on February 13, 2004 and paid on February 14, 2004.

185974                                                  -4-

the diversion costs associated with the change."

HMC's only dispute with Maersk's SCSF ¶ 9 is that the fact is not supported by the evidence. This is, however, wrong. Mr. Hartmann testified that he originally told Maersk the cargo was to be delivered to Minn Metals in Beijing ("Q: [T]he information that you provided to Maersk was that these containers were going to Minn Metals Steel Company in Beijing, China; is that right?  A: That's correct ..."). Hartmann Depo. at 169: 16-20. He admitted the cargo was sitting in Hong Kong while Maersk tried to get accurate information from him ("Q: And the reason why that was creating a problem, a question from Pam Lake and a problem for Maersk is because although the cargo had been diverted and was now sitting in Hong Kong, it shows the notify party as being in Beijing, China, right, and so they were asking you is this still correct?  A: That is a reasonable assumption, correct."). Hartmann Depo. at 170: 5-12. Exhibit 9 is an e-mail from Pam Lake of Maersk to Mr. Hartmann alerting him to the mistake in information provided to Maersk, and Mr. Hartmann's own email, dated January 28, 2004, to his Chinese customer asking for accurate information. Exhibit 10 is Mr. Hartmann's e-mail dated January 29, 2004, to his Chinese customer, advising that Maersk had been trying to contact Minn Metals in Beijing but "The numbers you had supplied did not work/nobody responded. So apparently this matter with the notifying Party needs to be straightened out before Maersk can issue the OBL's to HMC".[3] HMC

---

[3] *See also* Hartmann's Declaration at ¶ 7, in which he admits the cargo was discharged in Hong Kong on January 12, 2004; yet in early February Maersk still did not have accurate information

185974                                    -5-

cannot leave the Court and Maersk to guess concerning what it believes is not supported. It is not the Court's duty to search out HMC's concerns. *See* L.R. 56.1(f) ("the court shall have no independent duty to search and consider any part of the court record not otherwise referenced").[4]

HMC does not dispute, and therefore concedes Maersk's SCSF ¶ 10, which provides:

> Maersk notified HMC that storage and destination charges were being incurred. HMC asked Maersk to provide it with a summary of the charges that were accruing on the cargo. Maersk responded by providing HMC with a summary and explanation of the charges for the changes of destination and the demurrage.

*Id.* This admission, and the deposition testimony and exhibits on which it is based, flatly contradicts Mr. Hartmann's after-the-fact declaration that "If Maersk had advised HMC of the charges immediately prior to release of the cargo in Hong Kong, HMC could have made sure that the consignee pay [sic] all outstanding sums." Hartmann Decl. at ¶ 11. More significantly, however, HMC's contradictory positions is not material because HMC agreed that it, not its Chinese customer, would pay Maersk for these charges.

---

from HMC on was authorized by HMC to retrieve the cargo.

[4]HMC's contention that "HMC was having difficulty obtaining the Orignal Bills of Lading from Maersk", *see* Hartmann's Declaration at ¶ 8, while true, in now way contradicts the undisputed facts that HMC provided Maersk with bad information which prevented Maersk from printing BOLs and releasing the cargo. HMC's effort to shirk its admitted responsibility to timely provide Maersk with accurate information for the BOLs is unavailing.

HMC does not dispute that Mr. Hartmann told Maersk on multiple occasions that HMC would pay all demurrage and destination charges, and would later "settle internally" with its Chinese customer, Jade Alliance. *See* Maersk SCSF ¶ 11; HMC's SCSF at ¶ 11. HMC's only dispute is that, despite its unequivocal statements, Mr. Hartmann subconsciously believed Maersk would nevertheless collect the money from Jade Alliance, not HMC. *Id.* Not only does Mr. Hartmann's secret and unreasonable desire NOT create a genuine issue, but his declaration does not even say this. He confirms that it was Maersk's position at all times that HMC, not Jade Alliance, be responsible for all demurrage and diversion charges. Hartmann Decl. at ¶ 9. Despite its clear and unequivocal e-mails, and the plain and unambiguous language of the BOLs themselves, Mr. Hartmann now claims to have secretly believed Maersk would seek payment from Jade Alliance, not HMC. *Id.* at ¶ 10. Significantly, Mr. Hartmann's Declaration does not say that he and Pam Lake, or anyone else at Maersk, had such a conversation. This is a far cry from the Opposition, which contends at p. 9 that "Mr. Hartmann made it clear in telephone conversations with Ms. Lake that HMC's acceptance of the charges was only to facilitate processing of the changes caused by the diversions." HMC's legal memorandum lacks evidentiary support.[5]

---

[5] Even if true, Hartmann does not dispute that he made the representations that he would pay all demurrage and diversion charges to induce Maersk to release the cargo to HMC's Chinese customer, which Maersk did. Under those circumstances, where he induced reliance and action, he cannot be heard to complain now that he did not mean what he said.

185974                                    -7-

HMC's "partial dispute" with Maersk's SCSF ¶ 12 is without merit. Maersk quoted Mr. Hartmann's deposition, in which he admitted he told Maersk "time and time and time again in these e-mails we are going to be responsible for that" so that Maersk would release the cargo to Jade Alliance. It is inconceivable that, despite verbal and written confirmation, over and over and over, that HMC would pay the charges to Maersk, that HMC nevertheless somehow subconsciously hoped Maersk would try to collect from Jade Alliance and not HMC.

HMC's "dispute" with Maersk's SCSF ¶ 13 is without merit. Not only is an unspecified citation to "Memo. In Opp." not adequate, but Mr. Hartmann said what he said. He explained, as quoted verbatim in Maersk's Memorandum In Support at p. 10, that (1) he asked his Chinese customer to pay in accordance with their contract;[6] (2) his Chinese customer told him "everything is taken care of, everything is fine"; (3) but his Chinese customer never provided any evidence that it paid Maersk. Similarly, Mr. Hartmann testified:

> Yeah, see, and this is all here a big mess which I put myself into because we agreed to the additional charges sailing under the assumption which is now biting me that, okay, these charges will be borne in Honk Kong, **and Hong Kong walked away from it. This is a fact**.

*See* Maersk Memorandum In Support at 8 (Hartmann Depo. at 194: 11-16) (emphasis

---

[6] A contract which Mr. Hartmann admits was never provided to Maersk because it was not relevant to Maersk's business with HMC.

added).[7]

HMC's dispute with Maersk SCSF ¶ 14 and 15 are not material. Significantly, Mr. Hartmann admitted that he asked Ms. Matsumura to determine what HMC owed to Maersk; that he is a "bloody amateur" at book-keeping and that he trusted and relied on Ms. Matsumura's work.[8] He testified: "I sent a check or a wire transfer of that very same amount to Maersk because this is also evidence of **how much I trust Dora and her very fine work**. She figured out for me, Mr. Hartmann, you owe 18, almost $19,000. I said, oh, bad, but if I owe it, if you tell me, then I guess I have to pay it, so I made that payment to Maersk." Hartmann Depo. at p. 66 l.15-22 (emphasis added). HMC's attempt to now discredit Ms. Matsumura and Mr. Hartmann's reliance on her work is belied by his deposition testimony. Furthermore, HMC does not dispute that its own Exhibit "F" consists of a snippet of time, and does not include pre-October 2003 transactions. Moreover, Ms. Matsumura's deposition, cited in Maersk's SCSF, explained Exhibit "F," which she prepared, and thus HMC's reliance on the exhibit alone is out of context.[9]

---

[7] HMC's only conceivable dispute with SCSF 13 can be with the use of the term "stiffed," as Mr. Hartmann did not use that word; rather, he said his client "walked away from it." Semantics aside, he admits that neither he nor his customer paid Maersk.

[8] Page 64 of Mr. Hartmann's deposition, in which he described how he asked and entrusted Ms. Matsumura to determine what had and had not been paid, was inadvertently omitted from Maersk's SCSF, and is attached hereto as Exhibit "18" for the Court's convenience.

[9] This seems to be an immaterial dispute about whether HMC's practice of not paying invoices directly could be construed as "frequent" or whether "most" payments directly matched an invoice. As Ms. Matsumura testified: "Q: Ms. Matsumura, we were looking at Exhibit 2, and we

HMC's only dispute with Maersk's SCSF ¶ 16 is about whether the payment was an offer to compromise. HMC concedes that Ms. Matsumura, at Mr. Hartmann's direction, determined that $18,875.36 was owed to Maersk on BOL 2009 and 1026. HMC does not dispute that Ms. Matsumura made this determination following a demand by Maersk for over $73,000. As for whether the offer to pay $18,875.36 on a claim of over $70,000 was an offer to compromise, Exhibit 15 to the SCSF states the payment would be made to "clear the account." HMC's sole dispute is without merit. It is also immaterial to this case.

HMC does not dispute Maersk's SCSF ¶¶ 17 and 18, which establish that it paid $750 less than the tariff rate in effect for BOL 5274.

## II.   ARGUMENT

### A.   HMC Completely Ignores The Law And The BOL Terms.

HMC goes to great lengths to sow confusion over numbers, even to the point of confusing itself. *See* HMC's SCSF at footnote 1 and 2 (admitting its Opposition contains errors). What HMC completely ignores, however, is the law and the BOL terms, both of which establish that HMC is liable to Maersk and Maersk is

---

were all having a little difficulty understanding what exactly was happening, and I think the reason is because there had been a number of payments shown on this made to Maersk by Hartmann that didn't tie directly to a specific invoice amount, right? A: Right." Matsumura Depo. at 47: 17-24. Moreover, even a cursory examination of Exhibit 15 or Exhibit F (both of which were prepared by Ms. Matsumura) confirms that only 7 of the 14 payments HMC claims to have made to Maersk were in amounts that directly correlate to an invoice amount. In any case, it is not material to the dispute at hand.

entitled to summary judgment. *See* Maersk's SCSF at ¶ 3; Exhibits "1"-"4" at ¶ 14.4.

HMC does not dispute that the language of the bills of lading at issue in this case is plain and unambiguous. Accordingly, its attempt to manufacture a material issue of fact as to its intent is entirely improper and inadmissible.

"[W]hen construing a written agreement 'courts should not draw inferences . . . regarding the parties' intent when the [agreement] is definite and unambiguous.'" *Boskoff v. Yano*, 217 F. Supp. 2d 1077, 1085 (D. Hawai`i 2001) (quoting *State Farm & Cas. Co. v. Pacific Rent-All*, 90 Hawai`i 315, 324 (1999)). "The court should look no further than the four corners of the documents to determine whether an ambiguity exists." *State Farm & Cas. Co.*, 90 Hawai`i at 324. Indeed, parole evidence regarding the parties' intent as to the language used in a contract may be considered only when the contract language is ambiguous." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 124-25, 839 P.2d 10, 31, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992)). *See Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) ("The parole evidence rule prohibits introduction of extrinsic evidence of a prior or contemporaneous agreement which would vary or contradict the clear and unambiguous language in a contract."); *United States of America v. Ajugwo*, 82 F.3d 925, 928 (9th Cir. 1996) ("It is a fundamental rule of contract law that the terms of a clear and unambiguous written contract cannot be changed by parol evidence.").

Here, there is absolutely **no dispute** that the language of the bills of lading at issue are clear: "the shipper [HMC] . . . shall be jointly and severally liable to the Carrier [Maersk] for payment of all freight, demurrage, and other charges due hereunder." *See* Exhibits "1"-"4" to Maersk's SCSF. Indeed, HMC admits that it "did agree to cover the additional charges." HMC's Opposition at 10. As the language of the bills of lading are clear on its face, the parol evidence that HMC attempts to introduce as to its understanding of its acceptance of the demurrage charges, in its Opposition and the Hartmann Declaration is barred.

### B.  Hartmann's Declaration Is Inadequate.

Despite substantial deposition testimony from Mr. Hartmann and Ms. Matsumura in support of Maersk's Motion, HMC tries to create factual disputes with a general and conclusory declaration, devoid of specifics and details, and based on hearsay.

> The general rule in the Ninth Circuit is that a party cannot create a issue of fact by an affidavit contradicting his prior deposition testimony. If a party who has been examined at length on deposition could raise an issue of fact simply be submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

*Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (citations and footnote omitted). *See also United States of America v. Funds in the Amount of $30,670.00*, 403 F.3d 448, 51-52 (7th Cir. 2005) ("Summary judgment would be

meaningless if litigants could manufacture genuine issues of material fact through self-serving and unsupported 'admissions' materially different from positions taken in the past. This is why courts do not countenance the use of so-called 'sham affidavits,' which contradict prior sworn testimony to defeat summary judgment.").

Here, HMC attempts to create factual disputes by positing an unsupported, conclusory declaration that contracts Mr. Hartmann's testimony admitting that he agreed that it would pay the additional charges at issue in BOLs 2109 and 1026. Hartmann Depo. at 194: 2-16. His conclusory statements about "normal and customary procedure" and practice does not even establish that such was the custom and practice with Maersk specifically. Hartmann Decl. at 3, ¶ 10. Moreover, statements concerning what Ms. Jinks allegedly told Ms. Matsumura is unqualified hearsay and is not admissible. F.R.E. 801.

### B.   HMC's Concise Statement of Facts Is Defective.

Not only was HMC's SCSF late,[10] but it does not satisfy HMC's burden of identifying genuine issues based upon admissible evidence.

Exhibit "G" to the Hartmann declaration is not properly authenticated. Alleged in his declaration to be a "Notepad," Mr. Hartmann does not explain what the document is or what it means. Moreover, it appears Exhibits "F" and "G" to Hartmann's declaration were transposed.

---

[10] And devoid of the declarations and exhibits that are "only" supposed to be attached to it pursuant to L.R. 56(h).

## C. Argument in a Legal Memoranda is Not Sufficient to Defeat Summary Judgment.

"Genuine issues of factual issues must be supported by significant probative evidence." *Tran v. State Farm Mut. Auto Ins. Co.*, 999 F. Supp. 1369, 1372 (D. Hawai'i 1999). "Legal memoranda . . . are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *Id.*

In its legal memoranda in this case, HMC argues that Ms. Matsumura's calculation of the demurrage regarding BOL 1026 was "incorrect." Opposition at 5. In so doing, HMC improperly attempts to impeach Ms. Matsumura, who was entrusted to determine what was owed. Whether Ms. Matsumura correctly differentiated between "freight" and "demurrage" is immaterial; HMC concedes that neither was paid.

Regarding BOL 42109, HMC attempts to discredit its book keeper's testimony by characterizing it as "speculation" and "not probative." Opposition at 6. Again, such unsupported characterizations do not amount to evidence, much less sufficient evidence to defeat summary judgment.

## D. HMC's own Actions Belie Any Alleged Reliance on Representations By Ms. Andrea Jinks.

In his declaration, Hartmann alleges that an "Andrea Jinks" of Maersk had a conversation with Ms. Matsumura wherein Ms. Jinks allegedly agreed that HMC should not be responsible for additional charges on BOLs 1026 and 2109. Opposition

at 10; Hartmann's Decl. at ¶ 14. This, however is hearsay: Hartmann was not part of this conversation.

Moreover, what Hartmann conveniently fails to mention, however, is how his own actions belie any reliance on such an alleged statement from Ms. Jinks, a customer care clerk at Maersk at the time of the transactions. As explained in the Motion, Mr. Hartmann made multiple, express and unambiguous promises to pay the additional charges for 1026 and 2109. Motion at 8-10; Maersk's SCSF at ¶¶ 11-12; Exhibits "12" - "14"; Hartmann Depo. at 194: 2-16; at 207: 2 to 208: 14. Such promises induced Maersk to release the cargo. Maersk's SCSF at ¶ 12; Hartmann Depo. at 206: 2-19.

Perhaps more egregiously, however, Mr. Hartmann did not tell Ms. Matsumoto about his promises to pay Maersk for the demurrage. Matsumura Depo. at 63:6-8. In her discussions with Ms. Jinks, Ms. Matsumoto merely repeated to Ms. Jinks the incomplete story that Mr. Hartmann had provided to her. Indeed, Ms. Matsumura and Ms. Jinks never discussed Mr. Hartmann's promises to pay the additional charges in 1026 and 2109. Matsumura Depo. at 63:24-25; 64: 1-2.

Accordingly, HMC's own conduct completely negates any alleged reliance on any alleged statement by Ms. Jinks.

## III. CONCLUSION

Based on the foregoing reasons and authorities, and those contained in Maersk's Motion for Summary Judgment, Maersk respectfully requests this Honorable Court grant summary judgment in favor of Maersk and against HMC in the amount of $73,936.41 in unpaid ocean freight and charges and $14,787.28 in prejudgment interest, as well as an award of its attorneys' fees and costs.

DATED: Honolulu, Hawai`i, February 14, 2006.

DAMON KEY LEONG KUPCHAK HASTERT

_____
GREGORY W. KUGLE
JAMESNER A. DUMLAO

Attorneys for Plaintiff
MAERSK INC.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MAERSK INC., | CIVIL NO. CV 04-00652 (HG/BMK) |
| | (In Admiralty) |
| Plaintiff, | |
| | **DECLARATION OF JAMESNER** |
| vs. | **A. DUMLAO** |
| | |
| HARTMANN METALS CORPORATION, | |
| | |
| Defendant. | |

DECLARATION OF JAMESNER A. DUMLAO

I, JAMESNER A. DUMLAO, hereby declare as follows:

1. I am an attorney with Damon Key Leong Kupchak Hastert and one of the attorneys representing MAERSK INC. ("Maersk") in the above-captioned matter.

2. I make this statement upon personal knowledge, unless otherwise indicated, and am competent to testify to the matters contained herein.

3. Attached hereto as Exhibit "18" is a true and correct copy of pages 63-64 of the Deposition of Mr. Hanni Hartmann, November 15, 2005, that was inadvertently omitted from Maersk's Separate and Concise Statement of Fact, Filed January 17, 2006.

186054.1

I declare under penalty of perjury under the laws of the State of Hawai`i that the foregoing is true and correct.

Executed this 14th day of February, 2006, at Honolulu, Hawai`i.

_____
JAMESNER A. DUMLAO

186054.1