IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MAERSK, INC.,            )   CIVIL NO. 04-00652 HG-BMK
                       )
          Plaintiff,   )   **ORDER GRANTING IN PART AND**
                       )   **DENYING IN PART PLAINTIFF'S**
         vs.         )   **MOTION FOR SUMMARY JUDGMENT**
                       )
HARTMANN METALS CORPORATION,  )
                       )
          Defendant.   )
                       )
_____ )

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

This is an admiralty case involving the shipment of goods over which the Court has jurisdiction pursuant to 28 U.S.C. § 1333. Plaintiff Maersk, Inc. ("Maersk"), the carrier, has sued Defendant Hartmann Metals Corporation ("HMC"), the shipper, to collect unpaid ocean freight and other unpaid charges in the amount of $73,936.41, allegedly owed to it by HMC for the shipment of scrap metal from Hawaii to Asia. Maersk also sues for prejudgment interest, attorneys' fees and costs.

The Court finds that Maersk is entitled to summary judgment as to HMC's liability to it for unpaid diversion and demurrage charges in light of the clear and unambiguous language of the bills of lading and HMC's express promises to Maersk that it would pay these additional charges. It is undisputed that the

1

bills of lading at issue reflect the amount owed by HMC to Maersk
for services rendered, but the parties dispute what has been
paid.  Because a factual dispute remains as to the amount unpaid
by HMC, the Court denies Maersk's motion for summary judgment as
to the amount owed.

### PROCEDURAL HISTORY

On January 17, 2006, Maersk, Inc. filed its Motion for
Summary Judgment and Memorandum in Support.  Maersk also filed a
Separate Concise Statement of Facts in Support of Motion for
Summary Judgment ("Plaintiff's SCSF").

On February 6, 2006, HMC filed a Memorandum in Opposition to
Maersk's Motion for Summary Judgment ("Defendant's Opp.".)

On February 9, 2006, Defendant filed a Separate and Concise
Statement of Facts in Opposition to Plaintiff's Motion for
Summary Judgment.  ("Defendant's SCSF".)

On February 14, 2006, Maersk filed its reply.

On February 21, 2006, the matter came on for hearing.

### BACKGROUND

Maersk is an ocean carrier that provides ocean
transportation between Hawaii and Asia.  (Plaintiff's SCSF at ¶
1.)  HMC is a scrap metal dealer that purchases metal and resells
it to customers in China.  (Id. at ¶ 2.)  Maersk provided
shipping services to HMC between December 2003 and early 2004.
Maersk has sued HMC over unpaid ocean freight and other charges

2

involving four shipments.  Maersk alleges that four Bills of
Lading ("BOL") are at issue:  SJ1D42109 ("2109"), SJ1321026
("1026"), SJ1D42009 ("2009"), SJ1D45274 ("5274").  Maersk claims
that HMC owes it a total of $73,936.41 in unpaid ocean freight
and other charges.

   Each BOL prepared by Maersk contains identical language on
the back.  (<u>Id</u>. at ¶ 3.)  For each BOL, HMC would provide
essential information to Maersk, such as the number and contents
of the containers, the destination, and the party to whom the
containers should be delivered.  (<u>Id</u>. at ¶ 4.)  Each BOL was made
"freight prepaid".  (<u>Id</u>.)

   HMC entered into a contract with Jade Alliance or Lee Cheung
("Jade Alliance"), its customer in China, to ship scrap metal
from Hawaii to China.  (<u>Id</u>. at ¶ 5.)  HMC does not provide its
contracts with third parties to Maersk.  (<u>Id</u>.)  BOL 2109 and 1026
were part of the same booking made by HMC for its contract with
Jade Alliance.  (<u>Id</u>. at ¶ 6.)  The containers of steel scrap
bundles were originally destined for Shanghai.  (<u>Id</u>.)  Jade
Alliance then requested that HMC divert the cargo from Shanghai
to Chiwan (<u>Id</u>. at ¶ 8.)  HMC assured Maersk that HMC would pay
the diversion costs associated with the change.  (<u>Id</u>.)  The
cargo's destination was changed, for a second time, to Hong Kong.
(<u>Id</u>. at ¶ 9.)  HMC also changed the party who was authorized to
receive the cargo from Minn Metals in Beijing to Sing Fung

3

Trading Company in Hong Kong. (<u>Id</u>.)

While Maersk awaited the new delivery information, Maersk notified HMC that storage and destination charges were being incurred while the cargo remained at Maersk's equipment yard in Hong Kong. (<u>Id</u>. at ¶ 10.) HMC asked Maersk to provide it with a summary of charges that were accruing on the cargo. Maersk provided HMC a summary and explanation of the charges for the changes of destination and demurrage. (<u>Id</u>. and at Exhibit 7) HMC was unable to recover the charges from Jade Alliance. (<u>Id</u>. at ¶ 13.)

In early 2004, Maersk notified HMC that it had an unpaid balance. (<u>Id</u>. at ¶ 15.) In May 2004, Maersk notified HMC that the amount of the unpaid balance was $73,936.41. (Defendant's Opp. at Declaration of Hanni Hartmann ("Hartmann Declaration") at ¶ 12.) In July 2004, however, Maersk's account statement regarding the outstanding balance on HMC's account showed HMC as owing Maersk $22,899.09 on BOL 2009 and $40,807.32 on BOL 1026 for both unpaid ocean freight and demurrage charges (for a total of $63,706.41). (Defendant's Opp. at Exhibit A.)

Mr. Hartmann, HMC's President and sole shareholder (Plaintiff's SCSF at ¶ 2), asked HMC's bookkeeper, Ms. Dora Matsumura, to review Maersk's unpaid balance claim. Ms. Matsumura concluded that HMC owed Maersk $18,875.36 in unpaid ocean freight charges with regard to two BOLs: 2009 and 1026.

4

(<u>Id</u>. at ¶ 16.)  HMC tendered payment of $18,875.36 to Maersk.
(<u>Id</u>.)  Maersk rejected the payment.  (<u>Id</u>.)  Maersk contends that
it rejected the payment because it considered the payment as an
attempted compromise of the total unpaid charges.

Ms. Matsumura also concluded that HMC did not pay $23,814.09
in destination and demurrage charges with regard to BOL 2109 and
did not pay $30,497.01 in destination and demurrage charges with
regard to BOL 1026.  (<u>Id</u>. at Deposition of Dora Matsumura
("Matsumura Depo.") at p. 70, lines 15-24; p. 71, lines 1-16).

Maersk contends that HMC should pay it the unpaid
destination and demurrage as calculated by Ms. Matasumua, for a
total of $54,311.10 in destination and demurrage charges.  In
contrast, HMC contends that based on BOL 2109 and 1026, the total
destination and demurrage charges are approximately $40,860.78.
(Defendant's SCSF at ¶¶ 38-40.)

With regard to BOL 5274, HMC admits that it paid $750.00
less than the basic freight rate determined by the tariff in
effect at the time shipment was made.  (<u>Id</u>. at ¶¶ 17-18.) HMC
nevertheless denies that $750.00 remains outstanding because HMC
objects to Maersk deciding unilaterally where to credit HMC's
payments.  (Defendant's Opp. at 7.)  HMC also disputes the
allegation that BOL 5274 is unpaid.  According to HMC, BOL 5274
was originally billed in February 2004 and is not on Maersk's
July 2004 account statement reflecting HMC's unpaid BOLs. (<u>Id</u>.)

5

**STANDARD OF REVIEW**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  There must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met simply by pointing out to the district court that there is an absence of evidence to support the nonmovant's case.  Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence

6

of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).

Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994). Nor can the opposing party rest on conclusory statements. National Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

## ANALYSIS

I.  **Unpaid Diversion and Demurrage Charges:  BOL 2109 and BOL 1026**

    A.  *HMC Is Liable to Maersk for the Unpaid Diversion and Demurrage Charges*

HMC is obligated to pay Maersk unpaid diversion and demurrage charges for the shipments documented by BOLs 2109 and 1026.

With regard to demurrage and other charges, each BOL contains identical language:

> *The shipper*, consignee, holder hereof, and owner of the goods, and their principals, *shall be jointly and severally liable to the Carrier for the payment of all freight, demurrage*, General Average and other charges due hereunder, without discount, together with any Court costs, expenses and reasonable attorney fees incurred in collecting any sums due Carrier.

(Plaintiff's SCSF at ¶ 3 and at Exhibits 1-4 at ¶ 14.4 (emphasis added).  Each BOL was also made "freight prepaid" which is an industry term meaning the shipper, in this case HMC, is responsible for the charges.  (Plaintiff's SCSF at ¶ 4.)

The language of the BOL is clear and unambiguous.  "[W]hen construing a written agreement 'courts should not draw inferences . . . regarding the parties' intent when the [agreement] is definite and unambiguous.'"  Boskoff v. Yano, 217 F. Supp. 2d 1077, 1085 (D. Haw. 2001) (quoting State Farm Fire & Cas. Co. v. Pacific Rent-All, Inc., 978 P.2d 753,762 (Haw. 1999)).  Because

8

the language is clear and unambiguous the court does not consider parol evidence regarding the parties' intent.  See Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 839 P.2d 10, 31 (Haw. 1992); United States v. Ajuqwo, 82 F.3d 925, 928 (9th Cir. 1996).

Courts have found this provision to be valid and enforceable.  See e.g., Maersk, Inc. v. Atcom Industries, 73 F. Supp. 2d 387, 390 (S.D.N.Y. 1999); see also States Marine International, Inc. v. Seattle-First National Bank, 524 F.2d 245, 247 (9th Cir. 1975) ("It is well settled that the shipper rather than the consignee is primarily liable to the carrier for freight charges.").  HMC does not challenge the validity of this provision.

Significantly, HMC expressly agreed to pay the outstanding demurrage and diversion charges for the shipments documented by BOL 2103 and 1026.  (Plaintiff's SCSF at ¶ 11 and at Exhibit 13 (February 4, 2004 email from HMC to Maersk) ("We have already agreed previously in writing to accept any additional charges; . . We herewith confirm again that any diversion charges and possible demurrage will be accepted by us being your contractual partner."); Id. at Exhibit 14 (February 9, 2004 email from HMC to Maersk) ("HMC will accept the charges for the covered shipments . . ."); Id. at Deposition of Hanni Hartmann ("Hartmann Depo.") at 194, lines 2-16) ("Yeah, that I agreed that these charges are to be paid by us.").  HMC agreed to pay the demurrage and diversion charges so that Maersk would release the cargo to Jade Alliance,

9

HMC's customer in China. (Plaintiff's SCSF at ¶ 12; Hartmann
Depo. at p. 206, lines 2-19.) HMC was unable to recover the
charges from Jade Alliance. (Hartmann Depo. at p. 207, line 2
through p. 208, line 14.) HMC did not pay the diversion and
demurrage charges to Maersk.

### 1.   *HMC's Course of Dealing Argument Fails*

In its defense, HMC advances a course of dealing argument.
This argument fails in light of the BOL's clear and unambiguous
language and HMC's express promises to pay the additional
charges.

HMC contends that the consignee usually pays any additional
charges before the carrier releases the cargo to the consignee.
(Defendant's SCSF at ¶ 20.) Regardless of whether the parties
here had a previous custom for the consignee to pay the
additional charges before the carrier releases the cargo, in this
case, HMC admits that Maersk told HMC that it had to pay the
additional demurrage and destination fees before the cargo would
be released to the consignee and HMC expressly agreed to pay
those charges so that Maersk would release the cargo. (Id. at ¶
23 ("Hanni Hartmann had conversations with Maersk
representatives, including Carlos Sullivan and Pam Lake. Ms. Lake
relayed Maersk's position that all additional fees, including
demurrage and diversion, would need to be accepted by HMC before
the cargo could be processed for release to the consignee"); id.

at ¶ 24 ("HMC accepted the charges only because Maersk was requiring that HMC accept responsibility for the payments before it would process the diversions request and release of the cargo".)).

As discussed above, Mr. Hartmann admitted that HMC was responsible for the destination and demurrage charges, although he was under the impression that its customer in China, the consignee, would pay for them.  (Hartmann Depo. at 207, lines 18-23; 195, line 24 ("Yep, put myself in a big hole here.")  In an email from Mr. Hartmann to Maersk, Mr. Hartmann stated, in part: "We herewith confirm again that any diversion charges and possible demurrage will be accepted by us being your contractual partner.  We than will settle internally with our client in [Hong Kong] who has caused the diversions."  (Plaintiff's SCSF at Exhibit 13.)

Mr. Hartmann testified:

Q:  . . . you do recognize, though, that . . . you told Maersk time and time and time again in these e-mails we are going to be responsible for [the import demurrage charges]?

A:  I don't deny what I have read here on – on several of these exhibits.

Q:  And your goal was to tell Maersk that so the cargo would be released --

A:  To be ---

Q:  – to Jade Alliance?

A:  —released, expedited, and out of the circle of sitting in port and not getting moved.

11

(Hartmann Depo. at p. 206, lines 5-18.)

At the same time, Mr. Hartmann claimed that he was under the impression that Maersk would not release the cargo until all fees had been paid. (Hartmann Depo. at p. 206 lines 19-25, 207, lines 1-3.)

In short, HMC's position is inconsistent. HMC acknowledges that it agreed to pay the charges so that the cargo would be released while, at the same time, claiming that it was under the impression that the cargo would not be released until the consignee paid the charges.

Further, under the express language of the BOL, HMC is liable for additional demurrage charges. Although the fact that Maersk released the cargo to HMC's customer in China before the charges had been collected may have made it more difficult for HMC to collect the charges from its customer, that does not relieve HMC of its contractual liability for the charges.

For these reasons, HMC's argument that the parties' course of dealings modified the express language of the BOL fails.

### 2. *Maersk Is Not Responsible for the Demurrage and Other Additional Charges*

HMC contends that the demurrage and other charges were Maersk's fault. In particular, HMC claims that it was having difficulty obtaining the original bills of lading from Maersk and that this caused delays which added to the demurrage and other charges. (Defendant's SCSF at ¶ 22.) The evidence, including

Hartmann's undisputed deposition testimony, however, shows that the delay was because the notifying party had changed and HMC's customer had not provided the correct information regarding the notifying party.  (Plaintiff's SCSF at Exhibit 8.)[1]  Without this information Maersk could not issue the original bills of lading to HMC.

On January 28, 2004, Pam Lake of Maersk emailed Mr. Hartmann to advise him that the BOLs for the shipments still showed the consignee information for Bejing, although the shipment had been diverted to Hong Kong.  Ms. Lake wrote:  "As cargo was diverted per your request they need immediate clarification on new

---

[1]    Q:  Well, let me ask you is, the reason that Pam Lake [of Maersk] is asking you this question is because originally the information that Jade Alliance provided to you and the information that you provided to Maersk was that these containers were going to Minn Metals Steel Company in Beijing, China; is that right?
A:  That's correct, I recall that Minn Metals appears on the previous --
        *    *    *
A:  . . . Yeah, [HMC's customer] indicated to us tentative Minn Metals in Beijing.
Q:  And the reason why that was creating a problem, a question from Pam Lake and a problem for Maersk is because although the cargo had been diverted and was now sitting in Hong Kong, it shows the notify party as being in Beijing, China, right, and so they were asking you is this still correct?
A:  That is a reasonable assumption, correct.

(Hartmann Depo. at p. 169, lines 13-25, 170, lines 3-12.)

In later testimony, Mr. Hartmann again acknowledged that the documents show that the notifying party changed from Minn Metals to Sing Fung.  (Hartmann Depo. at p. 172, lines 22-25.)

consignee details. . . I will keep an eye on it to make sure Shanghai receives the info asap." (Plaintiff's SCSF at Exhibit 9.) Mr. Hartmann forwarded the email message requesting the new consignee details to HMC's customer. (<u>Id</u>.; Hartmann Depo. at 180, lines 2-6.) On or about February 3, 2004, Mr. Hartmann obtained the correct information regarding the notifying party and the port of discharge so that Maersk could issue the original BOLs for the shipments. (Plaintiff's SCSF at Exhibit 8; Hartmann Depo. at p. 169, lines 3-12.) On February 4, 2004, Maersk emailed HMC with a list of the outstanding charges for the BOLs. Maersk requested that HMC "confirm asap in the a.m. your acceptance in order we can process the changes. We need to have this resolved without further delay." (Plaintiff's SCSF at Exhibit 7.)

Mr. Hartmann testified:

Q:    So what you are saying is that the information –
      that Maersk was trying to contact the notify party
      in Beijing, and you are saying that the numbers
      that Jade Alliance had supplied didn't work, and
      that needs to get straightened out before original
      bills of lading can be issued, correct?

A:    That's what I'm saying here.

(Hartmann Depo. at 178, lines 16-22.)

In sum, there is no evidence to support HMC's argument that the delay in issuing the BOLs and consequent demurrage charges were the result of any action or inaction by Maersk.

### 3.    *The Doctrines of Waiver and Estoppel Do Not Apply*

14

HMC also suggests that Maersk failed to notify it of the demurrage charges in a timely manner and that this resulted in a waiver of the charges, breach of contract, or estoppel. (Defendant's Opp. at 11.).  HMC fails to provide any legal or factual basis for this defense.

Generally, "[w]aiver is a voluntary relinquishment, expressly or impliedly, of a known right and depends upon the intention of one party only."  <u>Morgan v. International Aviation Underwriters, Inc</u>., 58 Cal. Rptr. 164, 166 (1967).  Estoppel requires detrimental reliance or prejudice.  <u>Prudential-LMI Commercial Ins. Co. v. Superior Court</u>, 274 Cal. Rptr. 387, 397 (1990).

HMC's asserted waiver and estoppel defenses are not supported by the facts.  Maersk provided HMC with a summary of the charges in February 2004 (Plaintiff's SCSF at Exhibit 7.)  In May 2004, Maersk notified HMC that it was seeking additional fees in the amount of $74,852.41, although HMC states that Maersk did not provide it with the BOLs indicating the total demurrage and destination charges until August 2004.  (Hartmann Declaration at ¶¶ 20-21.)  There is no evidence that Maersk voluntarily waived its right to collect the demurrage and other additional charges from HMC.  There is also no evidence that HMC was prejudiced by the fact that Maersk did not provide the updated BOLs until August 2004.  Rather, the evidence shows that HMC knew of the additional charges in February 2004.  HMC does not present any

15

evidence that Maersk had an obligation to provide HMC with the amount of the additional charges within a certain time period or otherwise be precluded from recovering the charges incurred.

For these reasons, the Court holds that HMC is liable to Maersk, as a matter of law, for any unpaid destination and demurrage charges as documented by BOLs 2109 and 1026.

## II.  The Court Cannot Determine How Much HMC Owes Maersk for Diversion, Demurrage and Other Unpaid Charges

The parties dispute the amount owed by HMC to Maersk for the services rendered as reflected in BOLs 2109, 2009, 5274, and 1026.

### A.    BOLs 2109 and 1026

The parties dispute the amount of unpaid diversion and demurrage charges.  Maersk contends that HMC should pay it the unpaid diversion and demurrage as calculated by Ms. Matsumura, for a total of $54,311.10 in diversion and demurrage charges.  In contrast, HMC contends that BOLs 2109 and 1026 reflect total diversion and demurrage charges of approximately $40,860.78. (Defendant's SCSF at ¶¶ 38-40.)

At the February 21, 2006 hearing, HMC acknowledged that BOLs 2109 and 1026 accurately reflect the charges for the services rendered by Maersk.  HMC, however, disputes what amount remains unpaid.

### B.    BOLs 2009 and 1026

Maersk also claims unpaid ocean freight charges for BOLs 2009 and 1026 in the amount of $18,875.36.  Ms. Matsumura previously concluded that HMC owed $18,875.36 to Maersk for unpaid ocean freight charges and Maersk tendered that amount. HMC returned the funds.  HMC now disputes that it owes Maersk this amount.  On the record before it, the Court cannot determine whether Ms. Matsumura's calculations are correct and/or if it is an admission that HMC owes Maersk that amount.  It is undisputed that Mr. Hartmann is HMC's President and sole shareholder.  While the evidence shows that Ms. Matsumura served as HMC's book keeper, her authority to bind HMC is unclear.  Further, although tender of payment may be an admission of a debt owed under certain circumstances, that is generally not the case where payment is tendered as part of an offer to compromise a dispute.

### C.   BOL 5274

Finally, Maersk claims that HMC owes it $750.00 on BOL 5274 because Maersk did not pay the tariff rate in effect at the time of the shipping.  HMC does not dispute that the basic freight rate is determined by tariff and that the governing tariff rate is that in effect at the time of shipping.  Indeed, Maersk is statutorily prohibited from allowing "any person to obtain transportation for property at less than the rates or charges established by the carrier in its tariff."  46 U.S.C. § 1709(b)(1); see Sea-Land Service, Inc. v. Murrey & Son's Co., Inc., 824 F.2d 740, 744 (9th Cir. 1987) (tariff regime in the

Shipping Act of 1984 governing foreign shipments "seek[s] to eliminate unjust price discrimination by requiring that carriers file tariffs and strictly observe their published rates.").

While HMC does not dispute that the total payment amount of $11,539.81 as stated in BOL 5274 accurately reflects the charges for the services rendered by Maersk, HMC claims that there is no outstanding balance.

In sum, it is undisputed BOLs 2109, 2009, 5274, and 1026 accurately reflect charges for services rendered by Maersk to HMC.  A factual dispute remains as to how much HMC has paid Maersk and how much it continues to owe Maersk.  The Court cannot resolve the factual issues on summary judgment.

<u>CONCLUSION</u>

Because HMC is liable to Maersk, as a matter of law, for the unpaid diversion and demurrage charges for the shipments documented by BOLs 2109 and 1026, the Court **GRANTS** Maersk's motion for summary judgment as to HMC's liability for these charges.

The Court finds that the BOLs 2109, 2009, 5274, and 1026 are prima facie evidence of the services rendered by Maersk to HMC and of the amount owed for those services.  Because there is a factual dispute as to the outstanding amount owed by HMC to Maersk, the Court **DENIES** Maersk's motion for summary judgment as to the amount owed.

18

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. # 26) is **GRANTED IN PART AND DENIED IN PART**.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 13, 2006.



_____
Helen Gillmor
Chief United States District Judge

---

MAERSK, INC. v. HARTMANN METALS CORPORATION; CIVIL NO. 04-00652
HG-BMK; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT.