ORIGINAL

CYNTHIA A. FARIAS  #4108
810 Richards Street, Suite 810
Honolulu, Hawaii  96813
Telephone:  (808) 533-8887
Facsimile: (808) 521-2870

Attorney for Defendant
HARTMANN METALS CORPORATION

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

NOV 09 2006

at __9__ o'clock and __19__ min. __P__ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII    CV 04-00652 HG-BMK

| | |
|---|---|
| MAERSK, INC.<br><br>Plaintiff,<br><br>vs.<br><br>HARTMANN METALS CORPORATION,<br><br>Defendant. | DEFENDANT HARTMANN METALS CORPORATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFF MAERSK, INC.'S MOTION FOR ATTORNEY'S FEES, COSTS AND PREJUDGMENT INTEREST; DECLARATION OF CYNTHIA A. FARIAS; CERTIFICATE OF SERVICE |

DEFENDANT HARTMANN METALS CORPORATION'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF MAERSK, INC.'S
MOTION FOR ATTORNEY'S FEES, COSTS AND PREJUDGMENT INTEREST

Defendant HARTMANN METALS CORPORATION ("HMC"), by and through its undersigned counsel, hereby submits this Memorandum in Opposition to Plaintiff MAERSK, INC.'s Motion for Attorneys' Fees, Costs and Prejudgment Interest.

I.    PROCEDURAL HISTORY

The Court is familiar with the factual background of this case. However, it is important to point out that HMC was a regular customer of MAERSK over a period of several years. In fact, HMC provided steady and reliable business to MAERSK,

shipping many containers of metal and paying MAERSK over $300,000 in freight and related charges. This dispute, which resulted in both parties spending substantial fees and costs, was in large part the result of MAERSK's confusing billing practices and inflexible settlement postures.

Trial in this matter was scheduled for September 26, 2006. In an effort to avoid additional litigation costs and conserve court resources, HMC agreed to stipulate to a judgment in the principal amount of $65,000. Pursuant to stipulation, judgment will be entered on November 1, 2006. The parties further agreed that if the Court awards attorneys fees, costs and interest, the judgment will be amended accordingly.

MAERSK has now requested that the Court award it the total sum of $96,153.78 in fees, costs and prejudgment interest. This amount is completely unreasonable given MAERSK's own contribution toward the length and necessity of this litigation. MAERSK also includes in its requests costs to which it is not entitled. Finally, prejudgment interest should not be awarded because MAERSK's actions contributed to the delay in resolving this matter.

II.   ARGUMENT

   A.   Maersk's confusing billing practices contributed to the litigation.

This dispute arose because of confusion over payment of demurrage and diversion fees for cargo shipped under two Bills of Lading, 42109 and 321096. The usual and customary procedure in the shipping industry is that the shipper pays freight costs either before the cargo is loaded onboard or while the cargo is in transit. When the cargo arrives at its destination, it is claimed by a consignee or

notify party, who pays any additional charges such as demurrage (storage) to obtain release of the merchandise.

In this instance, HMC as shipper paid all freight charges for these Bills of Lading. While the goods were in transit, consignee Jade Alliance requested that the cargo be diverted. Without question, Jade Alliance was to bear the diversion and demurrage expenses. However, MAERSK would not process the diversion request until and unless HMC "accepted" responsibility for the charges. As a result, HMC was forced to agree to the charges. HMC "accepted" the responsibility only with the understanding that MAERSK would follow its own internal procedure and standard practice and advise the consignee of the outstanding charges before releasing the cargo. HMC was therefore assured that Jade Alliance would pay the additional fees before receiving the cargo. This was not done. Instead, MAERSK released the cargo to Jade Alliance without full payment and, months later, presented HMC with an invoice showing an outstanding sum for the diversion and demurrage.

The billing statement presented to HMC was not only far in excess of balances contained in HMC's own records, but did not contain specifics concerning the breakdown of charges. HMC was justifiably confused and immediately set out to clarify the billing. Unfortunately, from the outset HMC had difficulty obtaining from MAERSK a clear picture of what monies were allegedly owed and under which Bills of Lading. Dora Matsumura, HMC's bookkeeper, calculated that HMC owed Maersk $18,875.36, which HMC tendered immediately. MAERSK returned the

3

funds. Throughout the spring and into the summer of 2004, the parties engaged in protracted discussions in which MAERSK failed to adequately explain the charges.

MAERSK repeatedly sent HMC a list of invoices which contained different bill of lading numbers, although totaling the same amount.[1] Most recently, MAERSK has been faxing HMC "reminder" notices, a copy of which is attached hereto, listing 5 Bills of Lading numbers and the amount due on each.[2] This list is **different** than the list MAERSK presented to the Court in it's motion for summary judgment filed January 17, 2006. While the total amount claimed is the same, i.e. $73,936.41, the changing list of invoices just added to the confusion and made it impossible for HMC to understand MAERSK's accounting and to reconcile this accounting with its own. MAERSK could not explain, and, in fact, <u>has never explained</u>, how it determined which invoices were outstanding and how it credited payments made by HMC. This Court may recall that the Court advised MAERSK's attorney Greg Kugle to explain to HMC how payments were credited. To this date, HMC is unaware why there are several inconsistent lists of invoices totaling the same amount.

HMC is a small company with limited resources and could not simply pay

---

[1] Maersk's memorandum in support of its motion, page 2, states that "each BOL is a contractual agreement between HMC and MAERSK". Yet, Maersk has always been confused about which contracts were breached. In Maersk's demand letters, statements, the mediation statement and the motion for summary judgment, Maersk has presented varied lists of outstanding invoices. The larger invoices, which included the demurrage and diversion fees, were consistent. However other invoice numbers appeared on some lists and disappeared on others, to be replaced with different invoices.

[2] There is no reason for Maersk to send reminder notices to HMC. This case has been resolved through a stipulated judgment for the sum of $65,000. The reminder notices demand payment in the amount of $73,936.41.

a bill it did not understand and which was inconsistent and did not comport with its own accounting.

  B. MAERSK took an inflexible and uncompromising settlement posture, making it impossible for HMC to resolve the case.

Throughout the course of this litigation, MAERSK has been completely uncompromising in its settlement posture. MAERSK has refused to compromise on the principal amount sought, despite HMC's <u>repeated</u> efforts to resolve the case for an amount realistic to HMC.

On May 17, 2006, HMC forwarded a settlement offer to MAERSK for $50,500. The settlement reflected Judge Gillmor's ruling that HMC, as the shipper, was responsible for the diversion and demurrage charges (estimated at approximately $42,000). The offer was also dictated by HMC's limited resources. It is important to note that the diversion and demurrage fees essentially eliminated HMC's profit margin for these contracts, as HMC never calculated these charges in its costs. The offer was denied.

MAERSK's version of "compromise" has been to reduce its settlement demand from $150,000 to $125,000. Under this "compromise", MAERSK would agree to resolve the case for $51,100 over the principal owed, instead of $76,100 over the principal.

After HMC agreed to the stipulated judgment, HMC president Hanni Hartmann decided to use his own resources to attempt to resolve the claim. He would borrow funds to loan his company money to settle this case. On August 10, 2006, HMC forwarded a settlement offer to MAERSK to resolve the case for $100,000, payable as

$50,000 now and the remainder paid in monthly installments over the next two years. MAERSK rejected the offer.

Clearly, Maersk's inflexible settlement posture caused it to incur additional fees and costs, for which HMC should not be responsible.

    C.    HMC tendered payment of $18,875 which was returned by MAERSK.

In spring of 2004, HMC tendered the sum of $18,875 to MAERSK. The amount reflected sums due to MAERSK based upon HMC's bookkeeper, Dora Matsumura's, review of the invoices and amounts already paid by HMC. The check was not sent as a settlement or compromise of MAERSK's claims, and did not have any notation such as "paid in full" or similar language on it. Nonetheless, MAERSK returned the check, choosing instead to continue to confuse HMC by sending inconsistent lists of outstanding invoices and failing to clearly explain its accounting to HMC.

**HMC should be entitled to a 25% reduction on any fees awarded to reflect the percentage of the tender to the principal sought ($73,936).**

    D.    MAERSK has not complied with Local Rule 54.3 regarding the description of services rendered.

        1.    MAERSK's billings are overly broad and it is impossible to distinguish how much time was spent on each task.

Local Rule 54.3 specifies that the party seeking fees must describe the work performed by each attorney or paralegal broken down by hours or fractions thereof expended on each task. While MAERSK has divided its entries into the broad categories which describe phases of litigation, i.e. case development, pleadings, written discovery, depositions, etc., within each category MAERSK fails to separately describe

the tasks involved. Instead, Maersk lumps together tasks such as reviewing documents, telephone calls and research into one entry, making it impossible for HMC to determine how much time was spent on each task and address the reasonableness of the time.

In the following categories, the entries which are combined together are:

| Litigation Category | Entry summary | Dollar Amount |
|---|---|---|
| CASE DEVELOPMENT, BACKGROUND INVESTIGATION AND CASE ADMINISTRATION | | |
| 11/23/04 | review emails, telephone conference, draft correspondence | 529.00 |
| 1/6/05 | review/respond to correspondence, telephone conference, formulate discovery | 306.00 |
| 3/16/05 | leave messages, email, strategize responses to discovery, telephone conferences, review correspondence | 259.00 |
| 3/17/05 | telephone conference; strategize issue; email | 148.00 |
| 3/18/05 | respond to email, strategize discovery, research | 203.50 |
| 3/31/05 | review email, strategize objections to discovery | 92.5 |
| 4/4/05 | telephone conference, review correspondence, email | 388.50 |
| 4/5/05 | telephone conference, review and respond to correspondence, review emails | 220.00 |
| 4/6/05 | review communication, formulate strategy, draft update | 175.00 |

| 4/25/05 | telephone conference, review emails | 296.00 |
|---|---|---|
| 5/9/05 | telephone conference, review discovery, formulate strategy re: same, draft correspondence, draft email | 450.00 |
| 5/10/05 | review emails, telephone conference, draft email | 300.00 |
| 6/2/05 | conference re discovery, telephone conference | 225.00 |
| 6/2/05 | outline discovery issues, telephone conference, conference | 277.50 |
| 6/9/05 | telephone conferences, continue review of notepad entries | 129.50 |
| 6/10/05 | telephone conference, review Maersk documents | 148.00 |
| 6/14/05 | strategize mediator, telephone conference re: mediation | 55.5 |
| 6/17/05 | email, telephone conference | 92.50 |
| 7/20/05 | telephone conferences, formulate strategy, draft email, review emails | 200.00 |
| 7/21/05 | telephone conferences, draft emails | 100.00 |
| 8/1/05 | review and respond to emails, telephone conferences | 277.50 |
| 8/3/05 | leave messages, conduct legal research | 203.50 |
| 8/8/05 | email; telephone conference | 129.50 |
| 8/10/05 | telephone conference, correspondence | 55.50 |
| 8/12/05 | review email, review correspondence, strategize re status conference | 92.50 |
| 8/31/05 | review order, telephone conference | 350.00 |
| 8/31/05 | review correspondence, telephone conference | 185.00 |
| 10/24/05 | conference, telephone conference, transmittal | 1,628.00 |

8

| | | |
|---|---|---|
| 10/31/05 | leave messages, draft letter, review voicemail, telephone conference | 351.50 |
| 11/01/05 | conference with Austin and DeVoe; telephone call, review mediation brief, formulate strategy | 850.00 |
| 11/1/05 (note - different attorney billing for the same conference) | conference with DeVoe and Austin, telephone conference, review mediation brief | 703.00 |
| 11/3/05 | telephone conference, draft correspondence | 300.00 |
| 11/23/05 | review/revise correspondence; telephone conference | 75.00 |
| 12/22/05 | consult with DeVoe, revise draft of statement of facts, telephone conference | 259.00 |
| 3/8/06 | telephone conference, draft status update | 208.00 |
| 4/2/06 | formulate strategy, telephone call | 104.00 |
| 4/13/06 | review communications, telephone conference, draft/review/revise settlement conference statement | 312.00 |
| 5/2/06 | review emails, draft demand letter, legal research | 338.00 |
| 5/18/06 | review correspondence, formulate strategy, review/respond to email; telephone conferences | 234.00 |
| 8/8/06 | review/respond to communications, formulate strategy, draft correspondence | 286.00 |
| 8/29/06 | review status of document, telephone call, draft correspondence | 78.00 |
| 9/6/06 | review and execute document, telephone conferences | 52.00 |
| | TOTAL FOR CASE DEVELOPMENT | $11,667.5 |
| | | |

| INTERROGATORIES, DOCUMENT PRODUCTION, AND OTHER WRITTEN DISCOVERY | | |
|---|---|---|
| 12/16/04 | prepare discovery requests; telephone conference | 234.00 |
| 1/10/05 | strategize re discovery, telephone conferences, formulate requests | 324.00 |
| 2/10/05 | prepare draft, telephone conference | 277.50 |
| 3/1/05 | telephone conference, email, revise discovery requests | 259.00 |
| 3/14/05 | review discovery requests, review email, reply to same, strategize legal issue | 185.00 |
| 3/32/05 | email correspondence, draft discovery responses | 277.50 |
| 3/24/05 | telephone conferences, draft discovery responses | 296.00 |
| 4/1/05 | telephone conferences, review draft answers | 185.00 |
| 4/4/05 | formulate strategy re: discovery, telephone conference, review discovery status | 275.00 |
| 4/26/05 | conference, review documents produced | 425.50 |
| 5/9/05 | review/revise discovery responses, telephone conference | 703.00 |
| 5/19/05 | review documents, email, revise discovery response, telephone conference | 370.00 |
| 5/25/05 | revise discovery responses; review documentation, telephone conferences, transmittal | 647.50 |
| 5/26/05 | revise discovery responses, emails, telephone conferences | 536.50 |

10

| 5/27/05 | finalize responses, telephone conference | 388.50 |
|---|---|---|
| 7/21/05 | review supplemental production, strategize mediation brief, message for Lake | 462.50 |
| 7/30/05 | continue review of caselaw, review supplemental production | 222.00 |
| 11/3/05 | messages, review notices of depos, review information re: defendant, prepare subpoenas, telephone conferences, email, strategize motion for summary judgment | 536.50 |
| | TOTAL FOR WRITTEN DISCOVERY | $6,605.00 |
| MOTIONS PRACTICE | | |
| 9/15/06 | drafting motion for attorneys fees; legal research | 780.00 |
| 9/16/06 | continue drafting motion, legal research | 390.00 |
| 9/28/06 | telephone conference, draft update to Atkins and DeVoe, review/revise motion for attorneys fees | 260.00 |
| 10/19/06 | drafting reply memo, legal research | 104.00 |
| 10/27/06 | telephone conferences, formulate strategy re: supplementation of motion | 130.00 |
| 10/27/06 | telephone conferences, review motion | 91.00 |
| | TOTAL FOR MOTIONS PRACTICE | $1,755.00 |

HMC requests that none of the charges for the above-referenced entries be awarded.

  2. <u>MAERSK's descriptions of telephone calls are incomplete</u>

Rule 54.3(d)(2) requires that entries for telephone calls include an identification of all participants and <u>the reason for the call</u>. Many of MAERSK's entries concerning telephone conferences do not specify any reason for the call. Telephone

11

call entries, not otherwise included in the overly broad descriptions identified above, include the following:

| CASE DEVELOPMENT, BACKGROUND INVESTIGATION AND CASE ADMINISTRATION | ENTRY | DOLLAR AMOUNT |
|---|---|---|
| 5/12/05 | telephone conference with Hong Kong office re _____ | 55.5 |
| 11/18/05 | telephone conference with C. Farias re settlement offer; telephone conference with W. De Voe, Esq. re _____ | 225.00 |
| 12/16/05 | telephone conference with Julio Torres re _____ | 111.00 |
| 4/4/06 | telephone conference with Austin and De Voe re _____ | 156.00 |
| 4/17/06 | telephone conference with Atkins re _____ | 78.00 |
| | Total | $625.5 |

HMC requests that no award be made for telephone calls which do not contain a description of the call as required by the rule.

    3.    <u>MAERSK's descriptions of legal research are incomplete</u>.

Rule 54.3(d)(2) requires that "entries for legal research must include an identification of the specific issue researched." MAERSK's entries do not. In addition to the entries which are overly broad and contain reference to other case activities, the following research entries are not in compliance with the rule.

| CASE DEVELOPMENT, BACKGROUND INVESTIGATION AND CASE ADMINISTRATION | ENTRY | DOLLAR AMOUNT |
|---|---|---|
| 7/26/05 | conduct legal research re _____ | 129.50 |
| 5/2/06 | conduct legal research re _____ | 286.00 |
| 5/3/06 | review legal research re _____ | 78.00 |
| 5/4/06 | conduct legal research whether _____ | 231.00 |
|  | TOTAL FOR CASE DEVELOPMENT | $724.5 |
| MOTIONS PRACTICE |  |  |
| 9/2/05 | conduct legal research re _____ | 92.50 |
|  | TOTAL FOR MOTIONS PRACTICE | $92.50 |

    B.    <u>MAERSK's Fees Are Unreasonable</u>

        1.    <u>MAERSK's "case development" charges are unreasonable.</u>

MAERSK's fees for "case development, background investigation and case administration" amount to $24,717.00. It is difficult to understand how much case development was necessary, as MAERSK had its invoices and other documentation already prepared prior to suit. This sum is too high and out of proportion to the work necessitated by this case.

13

HMC requests that should the Court award fees for case development, the fees be reduced by at least $13,017.50 (the amount of billing entries which do not comply with Local Rule 54.3. as described above). Please note that billing for written discovery, depositions and motions practice, i.e. the mediation and motion for summary judgment, are discussed separately below.

2.      MAERSK's discovery charges are unreasonable.

MAERSK spent 99 hours on Interrogatories, Document Production, and Other Written Discovery. The total fees sought by MAERSK are $17,629.50. In fact, the parties exchanged one set of interrogatories and requests for production of documents. MAERSK also forwarded requests for admissions. The documents produced in this matter were not voluminous and totaled less than approximately 1000 pages, or two reams of paper. The relevant documents were much fewer. In addition, the issues in the case were not complicated and did not require any special discovery considerations.

HMC requests that the Court reduce any fees awarded for written discovery to a reasonable sum given the discovery performed.

With respect to depositions, there were three depositions completed in this case. The depositions were taken over a span of three days. Hanni Hartmann's deposition took over 1 day. However, both Dora Matsumura and Jeff Forrest's depositions were brief. HMC estimates that approximately 16 hours of depositions were taken in this case. MAERSK, however, seeks to recover fees for 49.4 hours of work ($8,933.00).

14

Again, HMC requests that the Court reduce the fees for depositions to a sum which is reasonable given the amount of time actually spent in the deposition and the fairly straightforward issues presented in this case.

3. <u>Mediation fees</u>

Under the category of Motions Practice, MAERSK seeks to recover $13,814.50 (Motions Practice entries 8/11/05 through 10/31/05) related to the mediation with Judge Patrick Yim. HMC contends that MAERSK should not be entitled to any fees for the mediation, which was agreed to by both parties in an effort to reduce fees and costs. Both parties agreed to bear their own costs of the mediation by contributing equally to the mediator's fees.

During the mediation, MAERSK refused to compromise on the principal it claim was owed, i.e. $73,936. At this time, HMC had a legitimate and good faith dispute concerning its obligation to pay demurrage and diversion fees. MAERSK's unwillingness to compromise rendered the mediation unsuccessful. HMC requests that it not be responsible for any failed attempts at settlement, including the mediation, because MAERSK voluntarily agreed to engage in mediation and did not participate with any intention of compromising.

4 <u>Summary Judgment fees should not be awarded.</u>

Trial in this matter was originally scheduled for January 18, 2006. On MAERSK's own request, HMC agreed to continue trial to give MAERSK the opportunity to file a motion for summary judgment. MAERSK apparently believed that the motion would resolve all issues and allow MAERSK to obtain a judgment without the necessity of trial. Given the confusing nature of MAERSK's accounting, Judge Helen Gillmor

15

could not determine how much was owed by HMC. As such, Judge Gillmor granted summary judgment only on the issue of the legal responsibility for the payment of demurrage and diversion charges. MAERSK essentially lost its motion and did not achieve the objective it was anticipating.

Now MAERSK is seeking to recover $17,067.00 in fees for preparing and filing the motion. However, there should be no fees owed to MAERSK on the motion for summary judgment.

F.      MAERSK seeks to recover costs which are not permitted.

MAERSK lists costs which it admits are not taxable. Nevertheless, it inexplicably includes these costs in the amount sought against HMC. HMC proposes that under these circumstances the Court should award no costs against HMC. However, in the event costs are awarded, the amount should not exceed $3,995.33, which includes the following: photocopying ($1,027.54), depositions ($2,622.79), sheriff fees ($89.00), witness fees ($88.00) and filing fees ($168.00).

G.      Prejudgment interest should not be awarded or should be limited.

The Court has discretion to decide when prejudgment interest is to commence and to set the rate of interest. HMC maintains that no prejudgment interest should be awarded because MAERSK's actions directly caused or contributed to any delays in payment. However, if interest is awarded, it should not be charged for the period in which HMC was attempting to obtain clarification from MAERSK concerning it's bill. Also, HMC should not be charged any interest on the $18,875.00 tendered to MAERSK in the spring of 2004. Finally, there should be no interest charged after

February of 2006, as any extension of the case beyond that was due to MAERSK's request for a motion for summary judgment.

Additionally, MAERSK seeks prejudgment interest on the entire amount claimed, i.e. $73,936.41, and not on the judgment amount of $65,000. Prejudgment interest, if any is awarded, should be calculated based upon the judgment amount of $65,000 less the tendered amount of $18,875.00, or $46,125.00.

With respect to the rate of interest, HMC requests that should the Court award prejudgment interest, the federal rate of interest under 28 U.S.C. Section 1961 be applied.

III.   SUMMARY

HMC respectfully requests that the Court deny MAERSK's motion in its entirety because MAERSK's confusing billing practices and its uncompromising and inflexible settlement posture contributed to the significant fees in this action. In the alternative, HMC requests that the Court seriously reduce any fees, costs and interest awarded to MAERSK.

DATED:   Honolulu, Hawaii, _November 9, 2006_

_____
CYNTHIA A. FARIAS
Attorney for Defendant
HARTMANN METALS
CORPORATION