ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

NOV 16 2006

at 3 o'clock and 15 min. __M
SUE BEITIA, CLERK

Of Counsel:
DAMON KEY LEONG KUPCHAK HASTERT
Attorneys at Law
A Law Corporation

GREGORY W. KUGLE          6502-0
gwk@hawaiilawyer.com
1600 Pauahi Tower
1001 Bishop Street
Honolulu, Hawai`i 96813
http://www.hawaiilawyer.com
Telephone: (808) 531-8031
Facsimile:  (808) 533-2242

Attorney for Plaintiff
    MAERSK INC.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| MAERSK INC., | CIVIL NO. CV 04-00652 (HG/BMK) |
|  | (In Admiralty) |
| Plaintiff, |  |
|  | **PLAINTIFF'S REPLY** |
| vs. | **MEMORANDUM IN SUPPORT** |
|  | **OF MOTION FOR ATTORNEYS'** |
| HARTMANN METALS | **FEES, COSTS AND** |
| CORPORATION, | **PREJUDGMENT INTEREST;** |
|  | **DECLARATION OF GREGORY** |
| Defendant. | **W. KUGLE; EXHIBITS "7" - "9";** |
|  | **CERTIFICATE OF SERVICE** |

# PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS AND PREJUDGMENT INTEREST

Plaintiff MAERSK INC. ("Maersk"), by and through its attorneys Damon Key Leong Kupchak Hastert, files its Reply Memorandum in Support of Motion for Attorneys' Fees, Costs and Prejudgment Interest.[1]

## I. INTRODUCTION

This case was expensive to litigate for one reason and one reason only: HARTMANN METALS CORPORATION ("HMC") has fought tooth and nail to avoid its repeated promises to pay Maersk for the services Maersk provided. HMC refused (and still refuses) to accept responsibility for its obligations. Only on the eve of trial did HMC finally admit that it owed Maersk virtually every penny that Maersk sued for. Now, after dragging this case out for over two years, HMC is still trying to avoid responsibility for its actions and blame Maersk for its problems. HMC must accept the consequences of its actions and be required to reimburse Maersk for its attorneys' fees, costs, expenses and interest.

Nearly three years ago, Maersk transported HMC's cargo from Hawai`i to Shanghai. When HMC asked that Maersk divert the cargo from Shanghai to Chiwan, Maersk obliged. When HMC asked Maersk to divert the cargo again, from

---

[1] As determined by the Court on Friday, October 27, 2006, HMC was required to file its memorandum in opposition to Maersk's Motion for Attorneys' Fees, Costs, and Prejudgment Interest, on November 9, 2006. On November 10, 2006 Maersk received an unfiled copy of HMC's memorandum in opposition.

Chiwan to Hong Kong, Maersk again obliged. As described in detail in Judge Gillmor's ruling on summary judgment, HMC agreed <u>in writing</u> on at <u>least two occasions</u> that it would be responsible for these charges. *See* Exhibits "13" and "14" to Maersk's Separate Concise Statement of Facts in Support of Motion for Summary Judgment ("SCSF"), attached hereto as Exhibit "7" for the Court's convenience. In his deposition, Mr. Hartmann again conceded that he had agreed to pay. Nevertheless, after the cargo was delivered, HMC denied responsibility. After suit was filed, HMC refused to pay. After depositions, HMC still refused to pay. After Judge Gillmor rejected all of HMC's defenses, it still refused to pay. On the eve of trial, after stipulating to judgment in the amount of $65,000 – well above the $18,000 it admitted it owed – HMC still refused to pay. HMC is trying to re-litigate this case under the guise of disputing Maersk's right to recover its attorneys' fees, costs, expenses and lost interest.[2]

## II. ARGUMENT

### A. HMC's Unsupported Factual History Is Irrelevant.

HMC's attempt to rewrite the facts to try to blame Maersk for this

---

[2] HMC goes through great lengths arguing facts, all of which are not supported by an admissible declaration, and all of which have been decided on by this Court. Judge Gillmor made the determination, in her summary judgment order, that on these facts, HMC was liable to Maersk for unpaid fright charges. The Court should not consider HMC's view of the facts as it is only as HMC wants them to be, and not what the Court found them to be.

dispute should be disregarded. *See* HMC's Memorandum in Opposition to Plaintiff Maersk, Inc.'s Motion for Attorneys' Fees, Costs and Prejudgment Interest ("Opp."), at 2-5. Not only are these "facts" totally unsupported, but they are completely contradicted by Judge Gillmor's description of undisputed facts. *See* Order Granting In Part Denying In Part Plaintiff's Motion For Summary Judgment ("Order"), attached hereto as Exhibit "8" for the Court's convenience. HMC is solely responsible for its failure to pay and is solely responsible for the expenses Maersk has incurred trying to receive payment for the services it provided.

**B.     HMC Alone Is Responsible For Not Settling This Case.**

HMC's attempt to blame Maersk for not settling this case for pennies on the dollar, or an unsecured promise to be paid in the future is unavailing.

Before suit was filed in response to Maersk's demand for payment of over $70,000, HMC offered $18,875.36 "**to clear this account**." *See* Exhibit "15 to Maersk's SCSF attached hereto as Exhibit "9" for the Courts convenience (emphasis added). For HMC to now argue this was not an attempt to compromise is preposterous.[3] *See* Opp. at 6. Moreover, in light of HMC's Stipulation to $65,000, this offer was clearly inadequate.

---

[3]HMC's tender in 2004, should not offset any award for attorneys' fees, costs and prejudgment interest because it was appropriately construed as an accord and satisfaction. Even if Maersk had accepted HMC's tender, the same amount of attorneys' fees would have been incurred in recovering the balance due.

193837.1                                -4-

HMC proceeds to recount a partial, unsupported and incorrect[4] history of settlement discussions. What HMC fails to disclose (aside from the Rule 408 nature of these exchanges), is that by the time HMC's dollar value approached the amount in controversy, HMC had already forced Maersk to expend substantial attorneys' fees. In a settlement conference, the Court requested Maersk to reduce its demand to $120,000, which Maersk did. HMC still refused that offer. Moreover, HMC fails to tell the Court that Mr. Hartmann refused Maersk's reasonable requests for security, since HMC wanted Maersk to finance its promise to pay over two years. "Once bitten, twice shy" applies to HMC's "promises" to pay.

C. **The Description Of Fees Is Adequate.**

1. **Combined Time Entries Provide Sufficient Detail.**

The description of services in the bills (and summaries) contain sufficient detail to enable the court to rule on the reasonableness of the request.[5] Maersk provided a detailed breakdown of services performed, broken into litigation phases as

---

[4]HMC claims that it made an offer to Maersk for $100,000 on August 10, 2006. HMC's offer, however, was made on September 20, 2006, for only $95,000 to settle all claims (including attorneys fees), $50,000 to be paid immediately, and $45,000 to be payable in equal installments over a 24-month period interest free. Maersk did not reject the offer, but merely requested a few more dollars, interest on the outstanding payments until paid in full, and security on the balance owed in order to ensure Maersk's payments. It was HMC that again, unreasonably refused to settle.

[5]Local Rule 54.3 requires that the listing of services performed by the attorneys' be "in sufficient detail to enable the court to rule on the reasonable of the request[.]" L.R. 54.3(d).

193837.1                                -5-

required by L.R. 54.3, providing the exact dates, hours, and fractions of hours spent in performing those services, the respective attorney's hourly rate and the cost of services.

The billing system organizes time entries by: (1) date; (2) attorney; (3) description of tasks; (4) hours or fractions of hours; and (5) cost. If multiple tasks are performed by an attorney in a single day, they are combined into one time entry for that day. In Exhibit "6" to Maersk's Supplemental Memorandum in Support of Motion for Attorneys' Fees, Costs and Prejudgment Interest ("Supp. Mem."), Maersk organized each day's time entry according to its litigation phase, as required by L.R. 54.3(d)(1), and placed combined time entries into the appropriate category according to the predominate service performed. The billing system does not provide an itemized time entry for each individual task performed on the same day, and to do so manually would add considerably to the cost of the services provided. Further, Maersk, the client, does not require such a breakdown. Despite individual tasks being combined into one time entry for each day, each legal service performed was described in sufficient detail and should not be disregarded because each individual email or telephone call does not always have individual time entries.

Furthermore, most of the individual tasks included in the combined time entries fall under the appropriate litigation phase. For example, November 23, 2004's time entry combines three tasks, "Review emails from W. De Voe, Esq.; telephone conference with W. De Voe; draft correspondence to C. Farias, Esq.," all of which fall

under the litigation phase of "Case Development, Background Investigation and Case Administration."[6]   Therefore, even though some time entries are combined, the legal services performed are organized according to the appropriate litigation phase and are in sufficient detail to determine the reasonableness of fees.

  2. **The Telephone Time Entries Are Complete.**

Maersk's description of telephone calls is sufficient.  L.R. 54(d)(2) requires that "[i]n describing such services, ***counsel should be sensitive to matters giving rise to attorney-client privilege and attorney work product doctrine***, but must nevertheless furnish an adequate non-privileged description of the services in question." *Id.* (emphasis added).  Descriptions furnished have been redacted in accordance with the attorney-client privilege and work product doctrine, and are supported by a declaration of counsel concerning reasonableness and necessity.[7]  Each redacted description discloses the participants of the call, but conceals the protected information, and therefore is an "adequate non-privileged description."[8]  Maersk will provide the Court with un-redacted versions of the bills for *in camera* inspection, if requested.

---

[6] Maersk's time entries and descriptions, in Exhibit "6" to Supp. Mem., provide more detail than suggested in HMC's Memorandum in Opposition. *See* Exhibit "6" to Supp. Mem and Opp. at 7-11.

[7] *See* Declaration of Gregory W. Kugle, attached to Supp. Mem.

[8] All other phone calls, other than those protected, provide additional information, including the participants and reason for the call.

### 3. The Legal Research Descriptions Are Sufficient.

Falling under the protection of the work-product doctrine, a redacted description of legal research issues were submitted. As discussed above, according to L.R. 54.3, "[i]n describing such services, *counsel should be sensitive to matters giving rise to attorney-client privilege and attorney work product doctrine*[.]" The un-redacted entries could disclose attorney work product. If the Court should request, Maersk will provide the Court with un-redacted versions of the bills for *in camera* inspection.

### D. The Attorneys' Fees Are Reasonable In Light Of HMC's Continued Refusal To Pay (Or Even Admit) Monies Owed.

#### 1. Attorneys' Fees For Case Development, Background Investigation And Case Administration Are Reasonable.

Case development, background investigation and case administration includes, "initial investigations, file setup, preparation of budgets, and routine communications with client, co-counsel, opposing counsel and the court." L.R. 54.3(d)(1). This litigation phase is one of the largest because it includes: time spent on the day to day case administration; abundant communications between the parties, the court and clients; formulating strategy; researching legal issues; negotiations between the parties; and so on. Because of HMC's refusal to pay money it owed for services performed, Maersk was forced to spend over two years in litigation, much of which was spent in this phase of litigation. All fees Maersk incurred was necessary

and reasonable in light of HMC's refusal to pay or even to agree that money was owed, and its refusal to enter a reasonable compromise. But for HMC's refusal to pay the freight charges, none of these fees would have been incurred.

### 2. The Written Discovery Charges Are Reasonable.

The amount of time spent on written discovery is reasonable. In the two years Maersk was forced by HMC to litigate this case, HMC's refusal to acknowledge any responsibility whatsoever, caused Maersk to undertake discovery aimed at narrowing the issues and obtaining undisputed facts, which included, among others: (1) the preparation of discovery requests, including a number of interrogatories and requests for production of documents; (2) a conference with HMC to set a discovery plan; (3) the preparation of a discovery report; (4) responding to discovery requests by HMC; (5) reviewing numerous documents produced by HMC; (6) reviewing documents in contemplation for production to HMC; (7) efforts to obtain supplemental production of documents by HMC; (8) discovery request involving a third party (Bank of Hawaii), to which HMC objected; and (9) discovery requests by HMC involving a third party in Asia. HMC contributed to much of the discovery costs by its multiple discovery requests and unreasonable objections.

HMC's own brief belies its argument that "the issues in the case were not complicated and did not require any special discovery considerations." Opp. at 14. Its memorandum in opposition is filled with claims that it was "confused." *See e.g.* Opp.

at 2. Was this case simple or confusing? HMC cannot have it both ways. Regardless of what HMC claims, it does not take away the fact that HMC owed money to Maersk for services it performed and refused to pay for over two years, and continues to refuse to pay to this day. Due to HMC's constant adversity in all phases of the litigation (including discovery), the amount of time spent on discovery was reasonable and necessary.

### 3.  The Deposition Charges Are Reasonable.

HMC claims that approximately sixteen (16) hours were spent taking depositions. Obviously, depositions are not taken without preparation. Under L.R. 54.3, *"preparation time should be reported under the category to which it relates . . . For example, time spent for preparing for a court hearing should be recorded under the category 'court hearings.'"* *Id.* n.1 (emphases added). Maersk did just that, it submitted all time entries relating to the various depositions taken, including time spent in preparation for the deposition, selecting exhibits, reviewing transcripts, as well as the time conducted in depositions; all of which were reasonable and necessary, particularly given the accounting morass of HMC's records or lack thereof.

### 4.  The Mediation Fees Are Reasonable.

Even though the parties agreed to mediate, the mediation was unsuccessful because of HMC's unreasonable stance in settling the dispute. It was the mediator who declared an impasse after realizing HMC's position. Had HMC paid the

money it owed to Maersk, no mediation expenses would have been incurred. Furthermore, had HMC mediated to a solution in good faith, subsequent attorneys' fees would have been avoided. But for HMC's continued opposition to pay money to Maersk it rightfully owed, Maersk would not have incurred substantial attorneys' fees participating in mediation and litigating this case; all fees to which Maersk is entitled to under each Bill of Lading.

### 5. The Summary Judgment Fees Should Clearly Be Awarded.

HMC misstates the result of Judge Gillmor's Summary Judgment Order. Despite HMC's assertion that Maersk "essentially lost its motion," *see* Opp. at 16, Maersk's motion for summary judgment was **granted** as to HMC's liability to pay for freight charges owed to Maersk. *See* Exhibit "8." Judge Gillmor rejected all of the defenses upon which HMC relied for its stubborn refusal to pay. It was only because of the Court's decision that HMC conceded that it owed Maersk an amount far in excess than its original position, resulting in the parties entering into a stipulation for $65,000 (over 3 times the original amount HMC claimed it owed). It is unreasonable for HMC to be asking the Court to disregard Maersk's expenditures on its summary judgment efforts – it was only because of the Court's Order that trial was averted.

### E. Maersk Is Entitled To All Costs And Expenses.

L.R. 54(d)(3) acknowledges that non-taxable costs may be awarded. Maersk is entitled to an award of *ALL* court costs and expenses incurred in litigating

this suit, including non-taxable expenses, pursuant to HMC's contractual duty imposed by each Bill of Lading. Each Bill of Lading provides that:

> The ***shipper***, consignee, holder hereof, and owner of the goods, and their principals, shall be jointly and severally liable to the Carrier for the payment of all freight, demurrage, General Average and other charges due hereunder, ***without discount, together with any Court <u>costs, expenses and reasonable attorney fees</u> incurred in collecting any sums due Carrier***.

*See* Exhibit "1" attached to Plaintiff Maersk Inc.'s Motion for Attorneys' Fees, Costs and Prejudgment Interest (emphasis added). Maersk is therefore entitled to an award of all costs and expenses, including those that are taxable and non-taxable.

### F.   Prejudgment Interest Should Be Awarded.

Maersk has been deprived of payment for over two years. It was HMC that failed to pay for services Maersk had provided, forcing Maersk to file suit. Furthermore, HMC's constant refusal to make a reasonable settlement offer caused this litigation to continue as long as it has. HMC has made clear for over two years that it would not pay what it rightfully owed Maersk, until the Court required it to do so. It is preposterous to suggest, as HMC does, that Maersk dragged this case out to run up interest. To date Maersk has not been paid, and HMC is going to force Maersk to undertake the full range of post-judgment collection efforts before ever giving up a penny of what it owes. Maersk has lost the use of its money for a total of two years and seven months. Prejudgment interest should be awarded on Maersk's full claim of

$73,936.41, and not the amount stipulated to because Maersk's stipulation was a concession to end this litigation and avoid further cost and delay, not a concession as to the amount correctly owed.

### III. CONCLUSION

Based on the foregoing, Maersk respectfully requests this Honorable Court to amend the judgment and award Maersk: (1) $20,948.62 in prejudgment interest; (2) $ 93,897.20 in attorneys' fees; and (3) $7,338.60 in costs.

DATED: Honolulu, Hawai`i, November 16, 2006.

DAMON KEY LEONG KUPCHAK HASTERT

*/s/ Gregory W. Kugle*
GREGORY W. KUGLE

Attorney for Plaintiff
MAERSK INC.