CYNTHIA A. FARIAS  #4108
(Email: cynfarias@msn.com)
810 Richards Street, Suite 810
Honolulu, Hawaii  96813
Telephone:  (808) 533-8887
Facsimile: (808) 521-2870

TED PETTIT          4287-0
(Email: tpettit@caselombardi.com)
ALEXIS M. MCGINNESS  8220-0
(Email: amcginness@caselombardi.com)
CASE LOMBARDI & PETTIT
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Telephone: (808) 547-5400
Facsimile: (808) 523-1888

Co-Counsel for Defendant
**HARTMANN METALS CORPORATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MAERSK, INC. | ) | CIVIL NO. 04-00652 HG-BMK |
| | ) | |
| Plaintiff, | ) | **DEFENDANT HARTMANN METALS** |
| | ) | **CORPORATION'S OBJECTIONS TO** |
| vs. | ) | **SPECIAL MASTER'S REPORT** |
| | ) | **RECOMMENDING THAT PLAINTIFF'S** |
| HARTMANN METALS | ) | **MOTION FOR ATTORNEY'S FEES,** |
| CORPORATION, | ) | **COSTS, AND PREJUDGMENT** |
| | ) | **INTEREST BE GRANTED IN PART** |
| Defendant. | ) | **AND DENIED IN PART; EXHIBIT "A";** |
| | ) | **EXHIBITS "1"-"3"; DECLARATION** |
| | ) | **OF CYNTHIA A. FARIAS;** |
| | ) | **DECLARATION OF HANNI** |
| | ) | **HARTMANN; CERTIFICATE OF** |
| | ) | **SERVICE** |

1

**DEFENDANT HARTMANN METALS CORPORATION'S
OBJECTIONS TO SPECIAL MASTER'S REPORT RECOMMENDING
THAT PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS, AND
PREJUDGMENT INTEREST BE GRANTED IN PART AND DENIED IN PART**

Defendant HARTMANN METALS CORPORATION ("HMC") , by and through

its undersigned counsel, hereby submits its Objections to the Special Master's Report

Recommending That Plaintiffs' Motion for Attorney's Fees, Costs, and Prejudgment

Interest Be Granted In Part and Denied In Part ("Report"), filed January 29, 2007 and

attached hereto as Exhibit "A".

"In acting on a special master's order, report, or recommendation, the district

court must afford an opportunity to be heard and may receive evidence. See Fed. R. Civ.

P. 53(g)(1)....The district court must decide de novo all objections to findings of fact and/or

conclusions of law made or recommended by, the special master." *Doe v. Keala*, 361 F.

Supp. 2d 1171, 1177 (D. Haw.  2005)

This case should have been a straight forward case by Plaintiff MAERSK,

INC. ("MAERSK") collecting amounts owed for cargo shipped by HMC.  Instead, Maersk

was unable to provide concise statements of account and was unwilling to reach a

compromise within the estimated range of amounts owed.  As a result, litigation was

prolonged between a behemoth international shipping company and a small local business.

 The parties eventually stipulated to judgment in the amount of $65,000.00, within the

estimated range, against HMC when the accounts could not be reconciled. See Stipulated

Judgment filed September 12, 2006.

2

On January 27, 2007, the Special Master recommended attorneys' fees, costs and prejudgment interest in excess of the Stipulated Judgment amount. Such attorneys' fees are not reasonable nor does the award meet the standards of billing established by this Court and set forth in the Rules of the United States District Court for the District of Hawaii ("Local Rules"). Therefore, this Court is hereby requested to re-examine this matter and reduce the amount of attorneys fees and costs to be awarded.

## I.     Relevant Factual and Procedural Summary

### A.     Background

HMC, a local scrap metal dealer, provided steady and reliable business to MAERSK for several years, shipping many containers of metal and paying MAERSK over $300,000 in freight and related charges. In early 2004, MAERSK notified HMC that it had an unpaid balance under certain Bills of Lading ("BOL"). See Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment ("Summary Judgment Order"), P.4. The balance reflected in MAERSK's billing statement, which simply listed the BOLs and amount owed on each, was far in excess of that contained in HMC's records. See Summary Judgment Order, P. 4; Declaration of Hanni Hartmann ("Hartmann Declaration") attached hereto. Because of this discrepancy, and the fact the statement failed to describe the nature of the charges, i.e. whether for unpaid freight, demurrage, diversion or other related fees, HMC was understandably confused and immediately set out to clarify the billing. Unfortunately, from the outset HMC had difficulty obtaining from MAERSK a clear accounting of what monies were allegedly owed, for what services and under which BOLs.

3

Dora Matsumura, HMC's bookkeeper, working in conjunction with MAERSK's staff, calculated that HMC owed Maersk $18,875.36. See Summary Judgment Order, P. 17. HMC tendered payment in a timely fashion in April 2004. MAERSK returned the funds. See Summary Judgment Order, P.5. Throughout the spring and into the summer of 2004, the parties engaged in protracted discussions in which HMC continued to request, to no avail, an accurate and complete statement of account from MAERSK.

Adding to the confusion, MAERSK repeatedly sent HMC statements with inconsistent lists of outstanding BOLs. Incredibly, the lists of outstanding BOLs presented in MAERSK's demand letters, billing statements, mediation statements and the motion for summary judgment varied from document to document. See Defendant Hartman Metals Corporation's Memorandum in Opposition to Plaintiff Maersk Inc.'s Motion for Attorneys' Fees, Costs and Prejudgment Interest ("Opposition"), P. 4. The only BOLs which consistently appeared on all billing statements were BOL42109 and BOL321026, which included diversion and demurrage fees and were the subject of this Court's Summary Judgment Order. Otherwise, BOLs which appeared on some statements disappeared on others, to be replaced with different BOLs. In its Memorandum in Support of its Motion, page 2, Maersk states that "each BOL is a contractual agreement between HMC and MAERSK". MAERSK's apparently random selection of which contracts were breached at any given time, and continued failure to explain these accounting mysteries to HMC, contributed in a substantial way to the length of this litigation.

4

**B.    Procedural Background**

MAERSK requested that the Court award it the total sum of $122,184.42 in fees, costs and prejudgment interest, which is equal to nearly twice the amount of the judgment. See Report.  Specifically, MAERSK requested attorneys' fees in the amount of $93,897.20.  The Special Master recommends awarding Maersk the sum of $76,876.96.[1] The requested costs of $7,338.60 is recommended in full.  The Special Master also recommends the requested $20,948.62 in prejudgment interest accrued as of February 14, 2004 be reduced to $7,161.97, reflecting accrued interest of 5.02% per annum (the federal interest rate) rather than 10% per annum since February 2004 on the stipulated judgment amount.

**II.    Objections**

HMC hereby object to the Special Master's recommendations as to the fees, costs and prejudgment interest for the following reasons:

1) The recommended attorneys' fees and costs are unreasonable for several reasons, including, without limitation, because the fees and costs are in excess of the stipulated judgment amount.  See Stipulation for Judgment and Order filed herein on September 12, 2006.

---

[1]The reduction of $17,020.24 reflected a 20% reduction of the $20,027.50 of entries the Special Master concluded were in violation of Local Rules 54.3(d); an insufficient entry of October 28, 2005 equal to $1,302.40 and double attorney billing for the same meeting of November 1, 2005 equal to $562.40.  The court further recommends a reduction of 20% of fees equal to $24,717 charged for case development because such amount was found unreasonable for this type of case and a 20% reduction of fees equal to $25,241 as Maersk was found to have spent an unreasonable amount of time on discovery.  The court also denied Maersk's request for an additional $2,000.00 for fees to be attributed "to obtain a final written judgment." See Report.

5

2) Maersk's attorneys should not be rewarded for their billing practices that violate Local Rules 54.3(d).  See L.R. 54.3(d).

3) The Special Master employed an arbitrary standard of 20% for reducing fees.  See Report.

4) The Special Master awarded Maersk all fees for mediation despite Maersk's unwillingness to participate in good faith in mediation seeking to compromise the unsubstantiated, disputed amount within a reasonable range.  See Report; see also Hartmann Declaration.

5) The Special Master awarded Maersk all fees for Summary Judgment, which was filed after the deadline, upon request by MAERSK in an effort to avoid trial.  The Court denied the Motion for Summary Judgment on the main disputed issue of damages.  See Summary Judgment Order.

6) The Special Master awarded Maersk costs for computer assisted legal research, which this Court has held is not recoverable under 28 U.S.C. § 1920.

7) The Special Master charged interest on the entire balance of the stipulated judgment amount from July 2004 and did not take into consideration numerous factors that would impact both the length of pre-judgment interest accrual and the amount of the principal upon which the interest is based.  See Report.

## II.    Objections to Special Master's Recommendations of Amount of Attorneys' Fees

"A party seeking attorney's fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained." *Finazzo v. Hawaiian Airlines*, 2006 U.S. Dist. LEXIS 89480 (D. Haw. December 11, 2006); see also *Tirona v. State Farm Mut. Auto. Ins. Co.*, 821 F. Supp. 632, 636 (D. Haw. 1993).  "A court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable." *Id.*

6

A.    **Fees for Billing Entries Which Violate Local Rule 54.3(d) Should Not Be Awarded**

    1.    *Block Billing Violates Local Rule 54.3(d)*

The Special Master agreed with HMC that sixty-six entries[2], totaling $20,027.50 violate Local Rule 54.3(d)[3] and make it difficult for HMC to effectively evaluate MAERSK's fee request due to clumping of multiple tasks, also referred to as block billing.[4] (Report p. 4). Attached hereto as Exhibit "1" is a complete list of those entries which HMC considers to be block-billed. Rather than denying Maersk's request in its entirety, however,

_____

[2]The entries are contained in the following categories: Case Development, Background Investigation and Case Administration; Interrogatories, Document Production, and Other Written Discovery; and Motions Practice. HMC objected to billing for Mediation Fees and Summary Judgment Fees on substantive grounds. Those entries identified as block billing within the categories of Mediation Fees and Summary Judgment Fees are set forth in Exhibit "1" attached hereto. By inclusion of such entries, the total entries subject to block billing would be 103, totaling $ 42,429.30.

[3] LR 54.3(d)(2) states in part "the party seeking an award of fees must describe adequately the services rendered, so that the reasonableness of the requested fees can be evaluated...but must nevertheless furnish an adequate non-privileged description of the services in question. If the time descriptions are incomplete, or if such descriptions fail to describe adequately the services rendered, the court may reduce the award accordingly."

[4] For example, on 11/23/2004, 2.3 hours was spent on "Review emails from W. De Voe, Esq.; telephone conference with W. DeVoe; draft correspondence to C. Farias, Esq.". This entry does not clarify whether a reasonable amount of time was spent on each task, nor for that matter, does it even explain what 2.3 hours was spent on, other than being later selected by counsel as case development/background investigation and case administration, twenty days after the Complaint was filed. Due to the block timing, it is also unclear whether it was reasonable to spend 1.20 hours on 4/5/05 on "telephone conference with Mr. C. Sullivan re _____; leave message with Magistrate B. Kurren's office re rescheduling status conference until after discovery responses/documents exchanged; review and respond to correspondence from Ms. P. Lake; review Maersk-Hartmann e-mails from Ms. P. Lake."

9999/466/653709.1

the Special Master reduced the $20,027.50 by 20% or $4,005.50. As discussed below, the Report contains no explanation or rationale for the application of a 20% reduction and provides no valid assessment of the reasonableness of the remaining 80% of the block-billing charges, especially in light of the violation of Local Rule 54.3(d).

Moreover, due to the block-billing, certain tasks that would otherwise be classified in one category of a litigation phase are instead listed in another phase, which results in a skewed assessment of the time spent on specific phases of the litigation. For example, on numerous occasions, MAERSK's counsel combines tasks that would otherwise be considered as part of the "Interrogatories, Document Production and Other Written Discovery" instead as part of "Case Development, Background Investigation and Case Administration."[5] The block billing thus avoids further entries being added to a total amount of time supposedly spent on discovery, which the Special Master found to be 'excessive' and avoids the ability to assess accurately the reasonableness of the time spent on specific tasks and phases of litigation.

The Special Master should enforce the Local Rules by denying the fees requested once it found that Maersk violated the rule on setting forth billing. The Special

---

[5] See Exhibit "2". Two examples of block-billed entries that are identified as "Case Development" but which include tasks that pertain to discovery include, but are not limited to:
- 5/9/05 - 1.80 hours spent on ""telephone conference with W. DeVoe, Esq.; review discovery responses; formulate strategy re:same; draft correspondence to C. Farias, Esq. Re discovery; formulate strategy re: _____; draft email to De Voe re same."
- 5/31/05 1.50 hours spent on "Strategize re preparing production of documents; corresponde with W. De Voe, Esq. Re _____".

8

Master's lack of enforcement of the Local Rules offers little incentive for attorneys to comply with Local Rule 54.3(d). MAERSK's block-billing did not afford HMC the ability to adequately evaluate the fee request and, as such, HMC is prejudiced by the Court's failure to enforce the Rule.

Moreover, the 20% reduction of block-billed fees was arbitrary and without regard to the reasonableness of the remaining 80% of fees. HMC objects to the Report and urges this Court to deny all block billed entries in their entirety. See e.g. _Robinson v. City of Edmond_, 160 F. 3d 1275 (10th Cir. 1998).

    2. _Lack of Adequate Description Violates Local Rule 54.3(d)_

In addition, HMC contests MAERSK's billing for certain telephone calls and legal research which did not contain a "reason for the call" and an identification of the specific issue researched" as required by Local Rule 54.3(d)(2). Entries pertaining to emails are also incomplete. See Exhibit "3" attached hereto setting forth those entries with incomplete descriptions.

"Reduction of the hours reported is warranted where counsel has provided inadequate documentation...[citation omitted]...Although 'the cases do not indicate that every minute of any attorney's time must be documented; they do, however, require that there be adequate description of how the time was spent, whether it be on research or some other aspect of the litigation'...[citations omitted]...Counsel should, at the very least,

9

"identify the general subject matter of his time expenditures...[citations omitted]." *Keala*, 361 F. Supp. 2d at 1184.

The Special Master indicated that, while the entries could have been more descriptive without revealing privileged information, the Special Master was willing to grant relatively wide latitude with respect to attorney-client privilege. Here, where the parties stipulated to judgment, there is no reason to invoke, much less defer, to attorney-client privilege. Plaintiff's Supplemental Memorandum in Support of Motion for Attorneys' Fees, Costs and Prejudgment Interest was filed on November 3, 2006 and Plaintiff's Reply Memorandum in Support of Motion for Attorneys' Fees, Costs and Prejudgment Interest was filed on November 16, 2006, after the Judgment in favor of Plaintiff was entered. Thus, there is some question as to whether certain redactions were necessary.

Notwithstanding the attorney-client privilege argument of Maersk, the entries which totaled $625.5 for telephone calls, $724.5 plus $92.50 for legal research, contained absolutely no description of the nature of the phone calls or research conducted and completely violate Local Rule 54.3(d)(2).[6] Similarly, numerous entries pertaining to email review fail to provide any context of their content so as to assess the reasonableness of

---

[6]The failure to explain the purpose for certain legal research is also applicable to the costs charged for the legal research services equaling $1,718.87. Such research costs can not be properly analyzed for their reasonableness given the lack of description of the issues and/or description of the pleadings for which such research was applied.

9999/466/653709.1

the hours spent on email review.[7]  See Exhibit "3" attached hereto setting forth those entries that inadequately describe the purpose of the task.

It is inappropriate to grant attorneys' fees for services rendered for unknown work in contradiction to the Court's requirement that entries nevertheless furnish an adequate non-privileged descriptions of the services in question.  See L.R. 54.3(d)(2).

**B.    The Special Master employed an arbitrary 20% standard to reducing fees for excessive billings.**

The 20% reduction of certain fees recommended by the Special Master lacks a concise and clear explanation in support of the reduction.  Instead, each entry should be examined for its reasonableness.

"Decisions of district courts employing percentages in cases involving large fees requests are subject to heightened scrutiny and the use of percentages, in any case, neither discharges the district court from its responsibility to set forth a 'concise but clear' explanation of the reasons for choosing a given percentage reduction nor from its duty to independently review the applicant's fee request." *Keala,* 361 F. Supp. 2d at 1186 (quoting *Gates v. Deukmejian*, 987 F. 2d 1392, 1400 (9th Cir. 1992)).

Even with a reduction of 20% of the attorneys' fees charged for certain aspects of the litigation, Maersk's attorneys' fees are excessive and unnecessary.  Maersk has failed to identify how such large amounts expended on certain aspects of the case were reasonably necessary to achieve the results obtained.  See e.g. *Berry v. Hawaiian*

---

7 Due to MAERSK's block billing, it is not possible for HMC to accurately assess the amount of time spent on email correspondence, in addition to the lack of description

*Express Services, Inc.*, 2006 U.S. Dist. LEXIS 87748 *48 (D. Haw. December 4, 2006). "Time expended on work deemed excessive, redundant or otherwise unnecessary" shall not be compensated." *Berry*, 2006 U.S. Dist. LEXIS at * 48 (citations omitted).

       1.   *Case development, background investigation and case administration*

       The Special Master agreed with HMC that 119.8 hours on case development, background investigation, and case administration was excessive. The Special Master then applied a reduction of 20% on $20,518.70.[8]

       The Report contains no basis for the selection of a reduction by 20%. As with the reduction applied to the block-billed entries, the 20% reduction applied to Case Development billings appears arbitrary. Moreover, the Special Master does not state that the remaining $16,414.96 is a reasonable fee for these case activities. The majority of these entries contain inadequate descriptions of what such task relates to, other than a categorization selected by counsel two years after the completion of many of the tasks as "case development" and thereby avoids providing an explanation to assess the validity of its reasonableness and whether such work contributed to the achievement of the intended result.

---

explaining the reason for the email.

    [8]The sum of $20,518.70 was determined by subtracting from the total fee requested of $24,717 the amounts that the Special Master had disallowed based upon block billing and inadequate description.

HMC believes that even with 20% reduction, the fees are still excessive. Maersk billed a total of 119.8 hours for case development on this straightforward collection matter. HMC suggests this Court substantially reduce the amount of fees related to case development given the simple issues in this matter.

### 2.    *Discovery*

The Special Master agreed with HMC that MAERSK's billing of 99 hours (or $17,629.50) for written discovery, and 49.4 hours (or $8,933) for depositions was excessive. Again, the Special Master applied the seemingly random figure of 20%, and reduced the discovery fees by $5,048.20[9]

With the proposed 20% reduction, Maersk's attorneys' fees for discovery amount to $20,192.80. This is grossly excessive in view of the limited discovery. As pointed out by HMC, the parties exchanged one set of interrogatories and requests for production of documents. The documents produced by both parties do not even fill half a standard bankers box. See Declaration of Cynthia A. Farias ("Farias Declaration"). There were three depositions taken over a span of approximately three days, totalling approximately 16 hours of deposition.

_____

[9]The Special Master applied the 20% to the discovery fees of $26,562 LESS $1,321 which was deducted for block billing - $25,241.

13

The issues in this collection case were not complicated. There were no intricate legal issues to resolve. There were no experts. Even reduced by 20%, the fees are unreasonable.[10] HMC contends that a much greater reduction is warranted.

### C.    Mediation Fees Should Not Be Charged To HMC Due to Maersk's Lack of Good Faith Participation

The Special Master recommends that HMC pay all charges related to the unsuccessful mediation. The Special Master points out that both parties accused the other of being unwilling to compromise. Maersk, however, flatly refused to compromise on the principal amount owed, but could not explain its own confusing billing records. See Farias Declaration. While a creditor cannot be forced into a settlement which is less than the principal amount it claims is owed, that creditor should know that a successful mediation under these circumstances is virtually impossible. In entering into the mediation, Maersk should have known AT THE OUTSET that its settlement posture would result in failure at the mediation. It seems pointless that Maersk would even discuss the possibility of mediation when it knew there would be no compromise made.

HMC objects to the Special Master awarding Maersk all of its fees relating to the mediation ($13,814.50). In the alternative, HMC objects to those block billing entries identified in Exhibit "1" that relate to the mediation.

---

[10] As explained above in Section II.A.1., additional time entries clumped with other tasks should probably be categorized under the discovery phase and would also increase the total amount of time spent on discovery. However, as discussed, due to the block billing, HMC is unable to accurately assess how much additional time should

14

D.    **Summary Judgment**

The Special Master recommends awarding Maersk all of its fees relating to the filing of the Motion for Summary Judgment. These fees amount to $17,067.00. Maersk should not be entitled to any fees for the motion because (1) the motion was filed at Maersk's request after the deadline for motions for summary judgment, and (2) because Maersk did not prevail on the motion as to the disputed issues. See Summary Judgment Order, P. 2.[11]

This matter was set for trial on January 18, 2006. The pretrial order filed February 2, 2005 set the deadline for dispositive motions as August 17, 2005. Maersk did not file its motion for summary judgment by the August 17, 2005 deadline. In late November, 2005, Maersk requested HMC agree to file a motion for summary judgment in lieu of the trial. Apparently, Maersk believed that the motion would save it fees and costs of a trial in which liability was not contested. See Farias Declaration. As a result, the trial date was continued to September 26, 2006 and Maersk was allowed to file its motion for summary judgment. The motion, which was heard on February 21, 2006, was granted in part and denied in part. While the Court found liability with respect to demurrage charges under certain BOLs, it also found that there were genuine issues of fact with respect to the amounts owed. See Summary Judgment Order, P. 2.

---

be applied to the discovery phase.

[11] "It is undisputed that the bills of lading at issue reflect the amount owed by HMC to Maersk for services rendered, but the parties dispute as to the amount unpaid by HMC, the Court denies Maersk's motion for summary judgment as to the amount owed". Summary Judgment Order, P. 2.

On September 12, 2006, 10 days before the trial date, HMC and Maersk entered into a stipulated judgment for $65,000. The Special Master erroneously concluded that the stipulated judgment was the result of Maersk prevailing on the motion with respect to liability. There is nothing in the record which provides a basis for this opinion. In fact, given the language of the Bill of Lading, which states that the shipper is responsible for demurrage charges, HMC believed even before the summary judgment motion that MAERSK would likely prevail on this issue at trial. As such, the Summary Judgment Order did not contribute to the stipulated judgment. Actually, it is probable that HMC would have stipulated to judgment on the issue of damages had no motion been filed and the original trial date remained intact. See Farias Declaration.

Maersk had the option of filing a motion for summary judgment by the deadline of August 17, 2005. It chose not to file one by that date. Nothing happened in the intervening months which made a summary judgment motion necessary or advisable.

Maersk should not be awarded any fees for its filing of the motion because 1) it was filed after the deadline only upon agreement by HMC; 2) the motion was unsuccessful in resolving the case and HMC was still faced with a trial date; and 3) in view of the clear liability issues in this case, HMC avoided unnecessary expense for both parties by stipulating to judgment.

E.    **The Requested Attorneys Fees and Costs Are Unreasonable As They Exceed the Judgment Amount**

"Attorney's fees and costs *may* be awarded, where, as here, the bills of lading provides for the award of attorneys fees." *Maersk, Inc. V. Atcom Industries*, 73 F. Supp. 2d

16

387, 392 (S.D.N.Y. 1999)(quoting *Alan Marketing*, 1998 WL 167232 at *3)(court exercised its discretion declined to award attorneys fees to Maesk for case regarding collection of unpaid charges for shipping of goods).

In this case, Maersk is requesting attorneys' fees nearly twice the amount of the judgment. See Stipulated Judgment. Not only did Maersk's inability to provide accurate accounting and unwillingness to reach a compromise within the legitimate disputed range of damages prolong litigation, but Maersk's counsel "overlawyered," incurring excessive fees and expenses for a relatively straightforward collection matter.

## III.    Objections to Special Master's Recommendation Regarding Legal Research Costs

MAERSK requested that the Court award $1,718.87 for legal research conducted on the Lexis Nexis Legal Research website.

While some courts are in dispute as to whether legal research is a recoverable cost, this Court has held that computer research is not a recoverable cost under 28 U.S.C. § 1920. *Yasui v. Maui Electronic Co., Ltd.*, 78 F. Supp. 2d 1124, 1130 (D. Haw. 1999); see also *Haroco v. American National Bank and Trust Company of Chicago*, 38 F. 3d 1429, 1440 (7th Cir. 1994) (holding that computer assisted research is included as an attorney's fee but not as a cost under section 1920).

Moreover, as indicated above, because Maersk failed to adequately describe numerous entries it is not possible to determine whether the use of such computer assisted research was reasonably necessary to achieve the results obtained. See e.g. *Berry*, supra.

17

Therefore, the costs requested by Maersk should be reduced by $1,718.87, to a total amount of costs of $5,441.21.

## IV. Objections to Special Master's Recommendation Regarding Prejudgment Interest

Prejudgment interest is discretionary in cases dealing with unpaid freight charges. <u>See</u> *Ceres Marine Terminals, Inc. v. M/V Harmen Oldendorff*, 913 F. Supp. 919, 929 (D. Md. 1995); <u>see</u> <u>also</u> *Maersk Inc. V. Atcom Industries*, 73 F. Supp. 2d 387, 392 *(S.D.N.Y. 1999)(Court used its discretion to deny prejudgment interest relating to action concerning disputes over unpaid charges for shipping of goods). HMC should not be penalized for (1) MAERSK's poor accounting records which prolonged the litigation and (2) MAERSK's failure to mitigate its damages by accepting the partial payment made in August 2004.

### A. HMC Should Not Be Penalized for Maersk's Inability to Produce Proper Accounting

The Special Master commenced prejudgment interest from July 26, 2004 to the filing of the Stipulated Judgment on September 12, 2006.    As HMC maintained throughout this litigation, MAERSK's billing system was confusing and incomplete. Maersk claimed HMC owed it a total of $73,936.41, but could not identify with consistency or accuracy which BOLs comprised the total amount. Around July and August 2004, Maersk forwarded to HMC several lists of outstanding BOLs. The lists contained different BOLs, adding up to the same amount owed.    In July of 2004, HMC was utterly and thoroughly confused about what amount was owed and under what BOL. And, despite repeated

requests over the course of this litigation, Maersk has never provided HMC with a simple statement of account, showing the payments made by HMC, how those payments were applied, and the balance on the account.

**B.    HMC Should Not Be Penalized For Maersk's Failure to Mitigate Its Damages**

HMC calculated that it owed Maersk $18,875 and tendered the payment in the spring of 2004.   There is no evidence which establishes that the tender was a settlement or compromise of MAERSK's claims or an attempt at accord and satisfaction. Maersk should have accepted the payment because it would not have been precluded from additional collection efforts.  Maerks's failure to mitigate its damages by accepting the partial payment should preclude it from receiving prejudgment interest on said amount.

"An effective accord and satisfaction requires the following prerequisites: (1) existence of a 'bona fide dispute' between the parties involved, (2) tender by the obligor which gives the obligeee adequate notice that a compromise is being proposed, and (3) effective acceptance of the compromise offer in order to discharge the original obligation." *Hawaii Leasing v. Klein*, 4 Haw. App. 1 (Haw. App. 1983)(quoting *Rosa v. Johnston*, 3 Hawaii App. 420 (Haw. App. 1982)).  Thus, "effective accord and satisfaction is a tender by the debtor which gives the creditor adequate notice that a compromise is being proposed...The debtor *must make it clear that acceptance of what he tenders is subject to the condition that it shall be in full satisfaction.*" *Teledyne Mid-America Corp. V. HOH Corp.*, 486 F.2d 987 (9th Cir. 1973)(emphasis added)(quoting *Potter v. Pacific Coast Lumber Co. Of California*, 37 Cal. 2d 592 (Cal. 1951)).  Thus, in order to be considered an

19

offer of compromise, for accord and satisfaction, HMC would have been required to provide adequate notice that the payment was an offer of compromise. Nothing in the record indicates that the payment was made as an offer of compromise.[12]

Therefore, HMC has been penalized for its good faith payment. The prejudgment interest should not attach to the tendered sum. Such a ruling promotes fairness and encourages parties to make payment to resolve disputes.

HMC proposes that should the Court agree with Special Master on the date of commencement of the interest, that the amount upon which interest is calculated be the $65,000 less $18,875, or $46,125.

## IV.    Conclusion

For the foregoing reasons, HMC respectfully request that the Court modify the recommendations of the Special Master. In particular, HMC requests that Court 1) disallow all block-billed entries; 2) further reduce fees billed for Case Development and Discovery; 3) eliminate or reduce fees billed for mediation; 4) eliminate fees billed for the

---

[12] See also *Mason Gin & Fertilizer Co. V. Piedmont Acid Delinting, Inc.*, 190 SE 2d 604 (Ga. App. 1972)(a check, although accompanied by a letter which contained the debtor's itemization of the amount, did not explicitly condition its acceptance as payment in full and thus did not sufficiently indicate that the check was conditioned on its acceptance as payment in full); *Ashby v. Hubbard*, 593 P 2d. 402 (Id. 1979)(debtor's tender was insufficient to indicate offer of compromise because there was no notation on the check that in complete settlement or as payment in full); *George Linskie Co. v. Miller-Picking Corp.*, 463 SW 2d 170 (Tex. 1971)(the check itself bore no notation, and the accompanying letter, while containing a detailed analysis of the amount and a description of the payor's position with respect to amounts disallowed, contained no statement to the effect that the check was intended as payment in full of all disputed

20

motion for summary judgment and 4) use the Court's discretion to deny prejudgment interest, or in the alternative, reduce the amount of the judgment to $46,125 for purposes of calculating prejudgment interest.


DATED:      Honolulu, Hawaii, February 20, 2007.


/s/ Alexis M. McGinness
TED N. PETTIT
ALEXIS M. MCGINNESS
Co-Counsel for Defendant
**HARTMANN METALS CORPORATION**

_____

amounts).